KEATON, ADMR., APPELLANT, *v.* RIBBECK, APPELLEE.

(No. 78-1321—Decided June 20, 1979.)

*Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy Co., L. P. A., Mr. John J. McCarthy* and *Mr. Harlan M. Gordon*, for appellant.

*Messrs. Jeffries, Kehn & Largent* and *Mr. Jeffrey W. Largent*, for appellee.

*Per Curiam.* In his first proposition of law appellant asks this court to expand the meaning of "pecuniary injury" in R. C. 2125.02,[1] one of this state's wrongful death provisions, beyond the definition set forth in *Karr* v. *Sixt* (1946), 146 Ohio St. 527, to permit recovery of damages for loss of society, comfort and companionship of the decedent. In paragraph six of the syllabus in *Karr*, this court stated:

"The term 'pecuniary injury' as used in Section 10509-167, General Code,[2] comprehends essentially injury measured by the prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom they would have proceeded. The term does not embrace such elements as bereavement or mental pain

---

[1] The relevant portion of R. C. 2125.02 provides, as follows:

"* * * The jury may give such damages as it thinks proportioned to the *pecuniary injury* resulting from such death to the persons, respectively, for whose benefit the action was brought * * *." (Emphasis added.)

[2] G. C. 10509-167 was the predecessor to R. C. 2125.02 which was last amended effective November 21, 1969. Under this amendment recoverable damages were expanded to include reasonable funeral expenses. Otherwise, R. C. 2125.02 remains essentially the same as the prior provision.

and suffering of the beneficiaries or the loss of the society or comfort of the deceased. (*Kennedy, Admr.,* v. *Byers,* 107 Ohio St. 90, approved and followed.)''

We are bound by this precedent construing ''pecuniary injury'' in accordance with the legislative intent at the time of the statute's enactment. *Miller* v. *Fairley* (1943), 141 Ohio St. 327. The General Assembly's re-enactment of this statute following *Karr* corroborates this construction. *Gaither* v. *Lager* (1954), 2 Ill. 2d 293, 118 N. E. 2d 4; see footnote two, *supra.* If the law should be changed, the change should come from the General Assembly.

Appellant also challenges the constitutionality of R. C. 2125.02, as construed pursuant to *Karr,* under the Equal Protection Clauses of the United States and Ohio Constitutions. In accordance with this court's consistent adoption of federal standards in construing Ohio's Equal Protection Clause, *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143; *State, ex rel. Strubel,* v. *Davis* (1937), 132 Ohio St. 555, the applicable test under both constitutional provisions is whether the state, by its enactment of R. C. 2125.02, has imposed differential treatment upon similarly situated classes of individuals, which treatment cannot be rationally justified by a conceivable, legitimate state interest. *Williamson* v. *Lee Optical Co.* (1955), 348 U. S. 483.

Appellant argues specifically that it is a denial of equal protection to award a spouse damages for loss of society, comfort and companionship, elements of lost consortium, for non-fatal injuries to the spouse's marital partner, yet not allow recovery of such damages where death results. Since the instant cause involves the death of an unwed minor, however, the more accurate inquiry should be whether parents and siblings of a non-fatally injured child are entitled to recover these damages and, if so, can the failure to award these same damages for wrongful death serve any conceivable, rational purpose.

Appellant has not cited, nor has our research discovered, any decisions of this court where loss of society, companionship and comfort of a child was permitted to be

considered by a jury in assessing damages. Those cases which do discuss damages recoverable for negligent injury to a minor disregard these losses. See, e. g., *Grindell* v. *Huber* (1971), 28 Ohio St. 2d 71; *Whitehead* v. *Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108. Since the law does not distinguish between the right to recover damages for the lost society of an injured child and a fatally injured child, there is no basis upon which an equal protection challenge may be premised. Appellant's constitutional objection is, accordingly, not well taken.

In his third proposition of law appellant urges this court to find a common law action for wrongful death, in addition to the statutory remedy provided for in R. C. Chapter 2125, which would permit the recovery of damages for lost society, comfort and companionship.

In the second paragraph of the syllabus in *Karr, supra* (146 Ohio St. 527), this court held that the wrongful death statute "is an innovation to the principles of the common law and affords the only civil remedy to compensate others for death resulting from injuries." This proposition is no less true today than it was at the time *Karr* was authored. Appellant's contention is without merit.

For the reasons preceding, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

CELEBREZZE, C. J., dissenting. R. C. 1.11 is an expression of legislative intent that all remedial laws, epitomized by the one before us today, "be liberally construed in order to promote their object and *assist the parties in obtaining justice*." (Emphasis added.) In order to obtain an equitable result the definition of "pecuniary injury" in R. C. 2125.02 should be given an expanded construction to allow recovery for the loss of a decedent's society, comfort, and companionship.

When the decision in *Kennedy* v. *Byers* (1923), 107 Ohio St. 90, was handed down construing the predecessor to R. C. 2125.02, the court relied upon a definition of "pecuniary injury" which, at the time, was prevalent in most other jurisdictions. However, the precedent relied upon for denying recovery for loss of companionship had its roots in a social and economic perspective that reached back into the Nineteenth Century. The Ohio Wrongful Death Statute under scrutiny in *Byers, supra,* like most other state wrongful death enactments, was "substantially similar to and generally follow[ed] the language of the English law known as Lord Campbell's act." *Id.,* at page 91.

Those early decisions reflected a societal view that the primary loss to a parent of a deceased child was the decedent's ability to provide wages; any other loss to those who survived him was merely intangible.

Rejecting the standard that the life of a child has no pecuniary value other than that of a wage-earner, the Michigan Supreme Court described the public policy that had fostered that view as follows:

"This, then, was the day from which our precedents come, a day when employment of children of tender years was the accepted practice and their pecuniary contributions to the family both substantial and provable. It is not surprising that the courts of such a society should have read into the statutory words 'such damages as they [the jury] may think proportional to the injury resulting from such death' not only the requirement of a pecuniary loss, but, moreover, a pecuniary loss established by a wage benefit-less-costs measure of damages. Other losses were unreal and intangible and at this time in our legal history the courts would have no truck with what Chief Baron Pollock termed in *Duckworth, supra* [157 Eng. Rep. 997], 'imaginary losses.' Loss meant only money loss, and money loss from the death of a child meant only his lost wages. All else was imaginary. The only reality was the king's shilling." *Wycko* v. *Gnodtke* (1960), 361 Mich. 331, 336-337, 105 N. W. 2d 118.

The court went on to hold, at page 340, that damages might be awarded for loss of companionship since such "human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value and its loss forms a part of the 'value' of the life we seek to ascertain."

Despite a legislative silence in the face of prior precedent propounding a more restrictive view of pecuniary loss, the court, at pages 337-338, nevertheless felt that such an outmoded concept could no longer survive:

"* * * In fact, our society, by one means or another, now attempts to keep children out of the general labor market. Yet there still exists in the law this remote and repulsive backwash of time and civilization, untouched by the onward march of society, where precedents we alone honor tell us that the value of the life of a child must be measured solely by the standards of the day when he peddled the skill of his hands and the strength of his back at the factory gates. We are not unaware of the argument in support of the proposition that legislative silence, subsequent to decisions interpreting a statute, must be construed as legislative acquiescence in the interpretation made."

The Supreme Court of Minnesota came to a somewhat similar conclusion in *Fussner* v. *Andent* (1961), 261 Minn. 347, 113 N. W. 2d 355. The first paragraph of the headnotes in that decision declares that Minnesota's Wrongful Death statute "is remedial in character and it is the court's duty *to construe it liberally in light of current social conditions.*" (Emphasis added.) The court went on to declare in the second paragraph of the headnotes that a strict "pecuniary-loss" standard for damages which permitted the parent-survivor of a wrongfully-killed child to recover only for the loss of earnings, services, and contributions reasonably expectable during the child's life, was unduly restrictive and should be expanded to conform with the needs and experience of the modern world. Hence, damages for the loss of "advice, comfort, assistance and protection" were deemed recoverable.

A majority of jurisdictions have now construed their

Wrongful Death Statutes to permit the recovery of what had formerly been considered non-pecuniary damages. See 1 Speiser, Recovery for Wrongful Death (2 Ed.) 313-314, at fn. 89, Section 3:49. The fact that courts have increasingly moved in that direction is a reflection of a change from that prior judicial outlook which "rejected the contention that no human life can be without value." Prosser on Torts 907 (4 Ed.), Section 127.

Indeed, this court itself has been known to shed the mantle of archaic jurisprudence when logic and simple justice require such a result. In *Clouston* v. *Remlinger Oldsmobile Cadillac, Inc.* (1970), 22 Ohio St. 2d 65, an analogous context, we expanded the right of recovery in negligence actions by indicating that consortium includes companionship, comfort, love and solace.

To continue to apply the anachronistic construction of "pecuniary injury" created nearly a half century ago and founded on a judicial philosophy that stretches back into the last century, especially in light of the mandate of R. C. 1.11, is indefensible. As Justice Smith so aptly articulated in *Wycko, supra*, at page 337:

"That this barbarous concept of the pecuniary loss to a parent from the death of his child should control our decisions today is a reproach to justice."