OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.

Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Gallimore, Appellee, v. Children's Hospital Medical Center,
Appellant.
[Cite as Gallimore v. Children's Hosp. Med. Ctr. (1993),
Ohio St.3d      .]
Torts -- Parents of a minor child who is injured by a
     third-party tortfeasor may recover damages in a derivative
     action for loss of filial consortium -- Minor child has
     cause of action for loss of parental consortium against a
     third-party tortfeasor who negligently or intentionally
     injures the child's parent.
                         ---
1.   A parent may recover damages, in a derivative action
     against a third-party tortfeasor who intentionally or
     negligently causes physical injury to the parent's minor
     child, for loss of filial consortium.  Consortium includes
     services, society, companionship, comfort, love and solace.
2.   In Ohio, a minor child has a cause of action for loss of
     parental consortium against a third-party tortfeasor who
     negligently or intentionally causes physical injury to the
     child's parent.  Consortium includes society,
     companionship, affection, comfort, guidance and counsel.
     (High v. Howard [1992], 64 Ohio St.3d 82, 592 N.E.2d 818,
     overruled.)
                         ---
     (No. 92-823 -- Submitted April 20, 1993 -- Decided
September 15, 1993.)
     Appeal from the Court of Appeals for Hamilton County, Nos.
C-890808 and C-890824.
     Appellee Jo Ann Gallimore, individually and on behalf of
her minor son, Joshua Best, filed an action in the Court of
Common Pleas of Hamilton County against appellant, Children's
Hospital Medical Center ("CHMC").  Appellee claimed that in
January 1985, CHMC, through its employees, negligently
administered to Joshua, her eleven-month-old infant, a massive
overdose of the ototoxic drug gentamicin, causing Joshua to
become permanently and profoundly deaf in both ears.
     In her amended complaint, appellee sought recovery for
Joshua against CHMC for the damages Joshua sustained as a

result of the alleged negligence.  Appellee also sought recovery on her own behalf for the damages she sustained as a result of Joshua's injuries, including the loss of the "consortium" of her child.1

Following a lengthy jury trial, the jury returned separate verdicts in favor of appellee individually and on behalf of Joshua.  For Joshua, the jury awarded $585,993 in special, or economic, damages and $200,000 in general, or noneconomic, damages.  For appellee's individual claim, the jury awarded $200,000 in general damages for appellee's loss of the "society" of her child, and $75,000 in special damages for the value of additional care and attendance required to be provided by appellee to Joshua as a result of CHMC's negligence.2  The separate general damage awards were each limited to $200,000 as the trial court, applying R.C. 2307.43, specifically instructed the jury not to return an award of general damages exceeding that amount.  In accordance with the jury's verdicts, the trial court entered judgment in favor of appellee and against CHMC for $1,063,993.3

CHMC appealed to the court of appeals, arguing, among other things, that the trial court erred in permitting appellee to recover general damages for loss of filial society.  CHMC claimed that Ohio does not recognize the right of a parent to recover damages for loss of the society of a non-fatally injured child.  The court of appeals rejected this argument and each of CHMC's assignments of error with the exception of one pertaining to an award of prejudgment interest.  With respect to a cross-appeal filed by appellee challenging the constitutionality of R.C. 2307.43, the court of appeals, following Morris v. Savoy (1991), 61 Ohio St.3d 684, 576 N.E.2d 765, held that R.C. 2307.43 was unconstitutional.4 Accordingly, the court of appeals affirmed the trial court's judgment in part, reversed it in part, and remanded the cause to the trial court for an assessment of damages without regard to the invalid general (noneconomic) damage limitation provisions of R.C. 2307.43.5

The cause is now before this court pursuant to the allowance of a motion to certify the record.

William H. Blessing and W.B. Markovits, for appellee.

Dinsmore & Shohl,  Frank C. Woodside III, Deborah R. Lydon, John E. Schlosser and Sara Simrall Rorer, for appellant.

McLaughlin, McNally & Carlin and Clair M. Carlin, urging affirmance for amicus curiae, Ohio Academy of Trial Lawyers.

Douglas, J.    We have granted jurisdiction in this case on only one issue of law.  The question before us is whether the parents of a minor child who is injured by a third-party tortfeasor may recover damages in a derivative action for loss of filial consortium.  In this context, loss of "consortium" would include the parent's loss of the services, society, companionship, comfort, love and solace of the injured child. We are convinced that the right to recover for such a loss has existed in Ohio for some time and, today, we expressly recognize that such losses are compensable in Ohio. Accordingly, we affirm the judgment of the court of appeals on this question.

Ohio has long recognized the right of a parent to maintain a derivative action against a third-party tortfeasor who

injures the parent's minor child. See, e.g., Grindell v. Huber (1971), 28 Ohio St.2d 71, 57 O.O.2d 259, 275 N.E.2d 614, and Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10. See, also, Norvell v. Cuyahoga Cty. Hosp. (1983), 11 Ohio App.3d 70, 11 OBR 120, 463 N.E.2d 111. We have held that the parent may maintain the action for the child's medical expenses, and for the parent's loss of the child's "services." Grindell, supra, at paragraph one of the syllabus; Whitehead, supra, at paragraph three of the syllabus. However, none of our cases has specifically limited the parent's right to maintain the derivative action to recovery of losses of only a pecuniary nature.

In Clark v. Bayer (1877), 32 Ohio St. 299, a grandfather, standing in loco parentis to his two infant grandchildren, brought suit against the children's abductors, claiming that the tortfeasors had wrongfully deprived him of the "possession" and "services" of the children. The plaintiff-grandfather alleged that he had expended time and money to recover "possession" of the children and had borne the expenses of nursing them back to health. Plaintiff did not aver in his complaint that he was deprived of any actual services, or that the infant children were capable of rendering valuable services. Nevertheless, the court in Clark held, as to loss of "services," that the plaintiff had alleged facts sufficient to maintain the claim. Id. at paragraph four of the syllabus. In the text of the opinion, the court stated:

"At common law, a parent has an action for the seduction of his child, to whose services he is entitled. Analogous to the injury occasioned by seduction, is that of the abduction of a minor child from its father, or one having it in lawful charge. To recognize the doctrine that one standing in loco parentis, clothed with the lawful custody of an infant under five years old, has no legal capacity to sue or maintain an action for damages, either general or special, against the child thief, would be an unwarranted restriction upon the common-law rights of the citizen. It would be no less restrictive, to hold that no action can be maintained for such course, by reason of the fact that the infant, because of its tender years, is unable to render any valuable services. The action rests upon the right to service, and not upon actual services.

"* * *

"On demurrer, an averment that the wrongful act complained of was done to deprive plaintiff of the services of the minors, without averring their ability to serve him, or the nature of the services of which he was deprived, is sufficient on the question of per quod servitium amisit.

"* * *

"The right to the custody of the infants, and their services as an incident thereto, is the gravamen of the action. Actual loss of services is not an essential allegation to enable plaintiff to maintain his action.

"But whether damages, other than compensatory, may be recovered, we do not say, for the reason that such question is not necessarily before us now for determination." (Emphasis added.) Id. at 311-313.

Appellee suggests that Clark supports the proposition that

this court has historically recognized the right of a parent to pursue recovery for nonpecuniary losses such as loss of society and companionship arising from a tortfeasor's conduct which affects the parent-child relationship.  In this regard, the court in Clark did recognize a "parental" right to maintain a general damage claim based upon "the right to service," despite acknowledging that the infant children were incapable of rendering valuable services.  Thus, the only "services" that the infant children could realistically have provided the plaintiff during the period of abduction were society, companionship, comfort, love and solace, i.e., elements of "consortium."

The case of Kane v. Quigley (1964), 1 Ohio St.2d 1, 30 O.O.2d 1, 203 N.E.2d 338, involved an action by minor children against a female "enticer" alleged to have wrongfully induced the children's father to abandon his family, thereby causing the children to be deprived of the father's affections, companionship and guidance.  In Kane, this court stated that "[n]o right of consortium exists between a parent and child," and concluded that "[t]here is no legal right in a child to maintain such an action for alienation of affections since that cause of action is based upon the right of consortium."  Id. at 3, 30 O.O.2d at 2, 203 N.E.2d at 339-340.  In the case at bar, the issue is whether a parent may recover damages for the parent's loss of filial consortium premised upon a child's personal injuries -- a situation markedly different from the issue addressed in Kane where the court refused to recognize an amatory action by minor children for their loss of a parent's affections.  Thus, Kane has no precedential value in cases such as the one now before us where personal injuries are involved.  Further, with regard to Kane, we are, in general, persuaded by the analysis of the issue as set forth in the dissents in Kane, supra, at 5-10, 30 O.O.2d at 3-6, 203 N.E.2d at 340-344 (Gibson, J., dissenting), and High v. Howard (1992), 64 Ohio St.3d 82, 86-96, 592 N.E.2d 818, 821-827 (Resnick, J., dissenting), and would apply and limit such reasoning to cases where the allegation is one involving physical injury to a person.

In Whitehead, supra, paragraph three of the syllabus, this court held that:

"Where a defendant negligently causes injury to a minor child, that single wrong gives rise to two separate and distinct causes of action:  an action by the minor child for his personal injuries and a derivative action in favor of the parents of the child for the loss of his services and his medical expenses."

The syllabus law in Whitehead is much the same as that found in Grindell, supra, at paragraph one of the syllabus:

"Where a minor child sustains an injury allegedly as the result of negligence of a defendant, two separate and distinct causes of action arise:  an action by the minor child for his personal injuries and a derivative action in favor of the parents of the child for the loss of his services and his medical expenses.  * * *" (Citation omitted.)

Neither Whitehead nor Grindell, supra, involved a claim by parents for loss of a child's society and companionship.  In Whitehead, a derivative action had been maintained by the

parents of a minor child for "medical expenses" and for the loss of the child's "services."  Id., 20 Ohio St.2d at 110, 112, 49 O.O.2d at 436, 437, 254 N.E.2d at 12, 13.  In Grindell, the father of a minor child sought recovery in a derivative action for "medical expenses incurred in the treatment of his son."  Id., 28 Ohio St.2d at 73, 57 O.O.2d at 260, 275 N.E.2d at 615.  Therefore, Whitehead and Grindell do not stand for the proposition that recovery in a parent's derivative action for injury to a minor child is limited to medical expenses and the value of lost services.  The question whether intangible losses, such as society and companionship, were recoverable in a parent's derivative action was not an issue in either of these two cases.

In Keaton v. Ribbeck (1979), 58 Ohio St.2d 443, 444-445, 12 O.O.3d 375, 375-376, 391 N.E.2d 307, 308, this court concluded, construing a prior version of Ohio's Wrongful Death Act, that the term "pecuniary injury" in former R.C. 2125.02 did not include wrongful death claimants' losses of the society, comfort and companionship of the decedent.  The court reached this conclusion by citing cases such as Karr v. Sixt (1946), 146 Ohio St. 527, 33 O.O. 14, 67 N.E.2d 331, which, in turn, relied upon precedents dating back to the early part of this century.  The court in Keaton also addressed an argument concerning the constitutionality of former R.C. 2125.02:

"Appellant argues specifically that it is a denial of equal protection to award a spouse damages for loss of society, comfort and companionship, elements of lost consortium, for non-fatal injuries to the spouse's marital partner, yet not allow recovery of such damages where death results.  Since the instant cause involves the death of an unwed minor, however, the more accurate inquiry should be whether parents and siblings of a non-fatally injured child are entitled to recover these damages * * *.

"Appellant has not cited, nor has our research discovered, any decisions of this court where loss of society, companionship and comfort of a child was permitted to be considered by a jury in assessing damages.  Those cases which do discuss damages recoverable for negligent injury to a minor disregard these losses.  See, e.g., Grindell v. Huber (1971), 28 Ohio St.2d 71 [57 O.O.2d 259, 275 N.E.2d 614]; Whitehead v. Genl. Tel. Co. (1969), 20 Ohio St.2d 108 49 O.O.2d 435, 254 N.E.2d 10].  Since the law does not distinguish between the right to recover damages for the lost society of an injured child and a fatally injured child, there is no basis upon which an equal protection challenge may be premised.  * * *"  Keaton, 58 Ohio St.2d at 445-446, 12 O.O.3d at 376, 391 N.E.2d at 308-309.

The statement in Keaton which implies that Whitehead and Grindell, supra, place a limitation on recovery in a parent's derivative action is inaccurate.  Whitehead and Grindell did not "disregard" society, comfort and companionship as elements of compensable damage in cases involving injury to a minor child.  Those elements of damage were not at issue in Whitehead and Grindell.  Moreover, the dearth of decisions from this court on the issue of a parent's right to recover for loss of filial society in non-fatal injury cases does not militate against recognizing that such losses are compensable.  The

scarcity of precedent on the question might best be explained by reference to a stagnant and antiquated view of the parent-child relationship which harks back to the days when children were thought to have little or no social value other than as laborers and wage-earners.

The right of a parent to recover for the loss of an injured child's "services" (i.e., labor and earnings) is a common-law right which dates back to a period in history when children were viewed as economic assets, and the child's value to the family was predominantly (if not exclusively) that of a laborer and wage-earner. See, generally, Note, Parent's Recovery for Loss of Society and Companionship of Child (1978), 80 W.Va.L.Rev. 340; Love, Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship (1976), 51 Ind.L.J. 590; and Shockley v. Prier (1975), 66 Wis.2d 394, 225 N.W.2d 495. At common law, a child was considered to occupy the same status with regard to a parent as a servant occupied with regard to his master. Note, supra, 80 W.Va.L.Rev. at 340-341; Love, supra, 51 Ind.L.J. at 599-601. This historical view of the parent-child relationship was fueled by the realities of an economic system where child labor was prevalent, and children represented a significant source of real or potential income to the family unit. See, generally, Note, supra, 80 W.Va.L.Rev. 340; and Shockley, supra. Thus, the gist of an action by the parents of an injured child was for monetary losses occasioned by the tortfeasor's conduct. This is no longer the case.

Times have changed and so should the law. Courts and commentators agree that the master-servant analogy to the relationship between parent and child is long overdue for judicial burial. See, e.g., Note, supra, 80 W.Va.L.Rev. 340; Love, supra, 51 Ind.L.J. 590; Shockley, supra; and Howard Frank, M.D., P.C. v. Superior Court (1986), 150 Ariz. 228, 722 P.2d 955. In the vast majority of modern family situations, children can no longer be considered an economic asset to their parents. The present-day economic burdens of raising children, coupled with child labor laws and mandatory school attendance, virtually ensure that recovery for loss of "services" alone will not adequately compensate the parents of an injured child for the true losses they suffer. Indeed, in these modern times, the society, companionship, comfort, love and solace between parents and their child is the essence of that relationship, more so than the "services" a minor child is capable of rendering to his or her parents.

In addition, Ohio's Wrongful Death Act has been amended since this court's decision in Keaton, supra. R.C. 2125.02 now specifically permits wrongful death claimants to recover for loss of earning capacity, services and society of the decedent as elements of compensable damage.6 Thus, in the present day, it would be incongruous to deny parents recovery for loss of the society and companionship of a seriously injured child while recognizing that such losses are compensable in cases involving death.

A review of the decisions from this court which affect the issue before us today leads us to the conclusion that none of our cases has ever prohibited the parent of a non-fatally injured child from maintaining a derivative action against a

third-party tortfeasor for the parent's loss of filial society, comfort, companionship, etc. In fact, a careful reading of this court's decision in Clark, supra, reveals a recognition by this court, as early as 1877, that such losses might constitute compensable elements of damage. We can find no specific common-law impediments to recovery for such losses. If there were any, they would be devoid of rational justification in the modern law. The common law is ever-evolving and we have the duty, absent action by the General Assembly on a specific question, to be certain that the law keeps up with the ever-changing needs of a modern society. Thus, we now formally recognize the apparently long-existing right of a parent to recover damages for loss of filial consortium.

Accordingly, we now hold that a parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child, for loss of filial consortium. We further find that "services" are just one aspect of consortium. "Consortium" includes services, society, companionship, comfort, love and solace. Other courts in this state (including the trial court and the court of appeals in the case at bar) have already recognized that such losses are compensable elements of damage in a parent's derivative action against a third-party tortfeasor. See Norvell, supra, and Drayton v. Jiffee Chem. Corp. (N.D. Ohio 1975), 395 F.Supp. 1081, 1097, 1 O.O.3d 325, 339-340, modified (C.A.6, 1978), 591 F.2d 352, 12 O.O.3d 135.

Appellant sets forth a number of policy arguments against recognition of a parental right to pursue recovery for the parent's loss of the society, companionship, love and solace of an injured child. These arguments include the difficulty of measuring damages, the "need" to limit tort liability, the danger of double recovery, and the undesirability of permitting parents to testify in open court as to the diminished value of the parent's relationship with the child. Appellant's arguments are not persuasive.

The difficulty in measuring damages for a parent's loss of filial consortium is no justification for denying the right to pursue the claim. In the case at bar, the losses suffered by Joshua's mother are readily apparent. Joshua has been rendered profoundly deaf, and he and his mother will be unable to enjoy a number of life experiences normally shared between parent and child. Simply because appellee's loss of the consortium of her child is intangible in nature does not mean that the loss is any less real and substantial, or that the loss should go uncompensated. Courts and juries have been called upon to determine damages for loss of spousal consortium for years, and have apparently done so without much difficulty. We have no reason to believe that assessing damages for loss of filial consortium will prove to be any more difficult. We note that pursuant to R.C. 2125.02(B)(3), courts and juries may currently award damages for loss of society as an element of damages in wrongful death cases. We also note that the jury in this case seemingly had little difficulty measuring damages for loss of filial consortium, although the award was "capped" by virtue of former R.C. 2307.43. We concede that money is a poor substitute for the damages appellee has sustained in this case,

and that money will not restore Joshua's hearing.  However, monetary compensation is currently the best our system of justice has to offer.

As to the "need" to limit liability, appellant suggests that recognizing the right of parents to maintain a claim for loss of filial consortium (in a derivative action already recognized in the law) could eventually lead to the recognition of the right of stepparents, brothers, sisters, aunts, uncles and grandparents, etc., to maintain separate actions for their loss of the consortium of the injured child.  Appellant essentially urges that a line must be drawn, and that it should be drawn here.  We agree with appellant that a line should be drawn somewhere, and today we hold only that the parents of a minor child may maintain a claim for loss of filial consortium.  We make no suggestion that the right does or should extend to a Gilbert and Sullivan cavalcade of "[h]is sisters and his cousins, whom he reckons up by dozens, and his aunts!"7  The parent-child relationship is unique, and it is particularly deserving of special recognition in the law.  As we stated in Williams v. Williams (1975), 44 Ohio St.2d 28, 29, 73 O.O.2d 121, 122, 336 N.E.2d 426, 427, "[i]n our society, the parent-child relationship is special, invoking strong feelings of love and affection."

Appellant also suggests that permitting a parent to maintain a claim for loss of filial consortium creates the possibility of double recovery.  However, the gist of a claim for loss of filial consortium is for the loss the parent suffers as a result of an injury to the child, which includes loss of services, society, companionship, comfort, love and solace.  The child does not also recover for that loss.  Furthermore, appellant's argument assumes that a jury will be unable to follow proper instructions designed to prevent the possibility of double recovery.  That assumption has been rejected under analogous circumstances.  See Clouston v. Remlinger Oldsmobile Cadillac, Inc. (1970), 22 Ohio St.2d 65, 72-73, 51 O.O.2d 96, 100-101, 258 N.E.2d 230, 234.  As always, we have the utmost confidence in a jury's ability to follow the law in accordance with proper instructions.

Appellant has also expressed concern that permitting recovery for loss of filial consortium in non-fatal injury cases will cause parents to testify in open court to minimize the worth of the parent-child relationship and disparage the "value" of the injured child.  However, we do not believe that a parent is likely to proclaim in open court, before a jury and the injured child, that no love or affection exists between parent and child as a result of the tortfeasor's conduct.  This would be an unseemly spectacle indeed, and is not likely to happen.  Rather, the parent's testimony will more likely be focused on the parent's and child's inability to share in the activities and enjoyment of life experiences normally shared by parents and their children.  Such testimony will not degrade the child or minimize the importance of the parent-child relationship in our society.

Appellant also argues that recognition of a rule permitting parental recovery for loss of filial consortium in non-fatal injury cases is a matter best left to the legislature.  We disagree.  In response to appellant's

argument, we stress that it was this court, not the legislature, that first recognized and established the right of a wife to maintain an action for loss of consortium against one who injures her husband.  See Flandermeyer v. Cooper (1912), 85 Ohio St. 327, 98 N.E. 102; and Clouston, supra.  See, also, Westlake v. Westlake (1878), 34 Ohio St. 621.  When the common law has been out of step with the times, and the legislature, for whatever reason, has not acted, we have undertaken to change the law, and rightfully so.  After all, who presides over the common law but the courts?  As we stated in the historic case of Flandermeyer, supra, at 337-338, 98 N.E. at 104:

"A statutory right can not change except by action of the law-making power of a state.  But it is the boast of the common law that:  'Its flexibility permits its ready adaptability to the changing nature of human affairs.'  So that whenever either by the growth or development of society or by the statutory change of the legal status of any individual he is brought within the principles of the common law, then it will afford to him the same relief that it has theretofore afforded to others coming within the reason of its rules.  If the wrongs of the wife are the same in principle as the wrongs of the husband, there is now no reason why the common law should withhold from her the remedies it affords to the husband."

In finding that the common law should change to permit the wife co-equal rights to maintain an action for loss of spousal consortium, the court in Flandermeyer, in an early enlightened view, stated:

"Either we must hold that the common law is fixed, unchangeable and immutable, that it possesses no such flexibility as will permit its ready adaptability to changing conditions of human affairs, or that when every reason and every theory for denying the wife the same rights as the husband, has entirely disappeared from our jurisprudence, that she is now equally entitled with her husband to every remedy that the common law affords, and we have no hesitation in adopting the latter view."  Id., 85 Ohio St. at 340, 98 N.E. at 105.

The common law is not static.  It is dynamic, and it must continue to evolve to keep up with the times.

Finally, appellant urges that we should refrain from recognizing a common-law rule permitting parents recovery for their loss of the consortium of a child because a number of courts in our sister states have refused to recognize the existence of such an action.[8]  Our answer to this contention is twofold.  First, and again, we are not creating a new right.  We are, at the most, rediscovering a right that has apparently always existed but has never been given full life by this court.  Second, we are more persuaded by the decisions of those courts which have undertaken to recognize an action for loss of filial consortium,[9] as opposed to those that have taken a contrary view.

We recognize that our decision today represents a departure from the reasoning in the recent case of High v. Howard, supra, 64 Ohio St.3d 82, 592 N.E.2d 818, wherein the court held that:  "Under Ohio law, a child does not have a cause of action for loss of consortium against a third-party

tortfeasor who negligently or intentionally injures the child's parent." Id. at syllabus. High could be distinguished from the case at bar since High addressed the issue whether Ohio recognizes the right of a child to maintain an action for loss of "parental consortium." However, our holding with respect to the right of a parent to maintain a claim for loss of filial consortium is logically inconsistent with the holding (and reasoning) in High. Regardless of who suffers the physical injury (parent or child), the other member of the parent-child relationship may suffer loss of the consortium of the injured victim. It is, therefore, necessary to revisit High in light of our decision today.

Justice Resnick's well-reasoned dissent in High, 64 Ohio St.3d at 86-96, 592 N.E.2d at 821-827, accurately explains why the majority decision in that case is fatally flawed. The dissent clearly sets forth the reasons why this court should recognize a cause of action by a minor child for loss of consortium occasioned by an injury to the child's parent. A majority of this court is persuaded by that dissent.

Therefore, for the reasons set forth in our opinion today, and for those set forth in Justice Resnick's dissent in High, we overrule High and hold that, in Ohio, a minor child has a cause of action for loss of parental consortium against a third-party tortfeasor who negligently or intentionally causes physical injury to the child's parent. In this context, consortium includes society, companionship, affection, comfort, guidance and counsel.

Those who take umbrage with our decision recognizing the rights of parents and children may suggest that the only change that has occurred since High was decided is a change in the composition of this court. However, High was decided by a hotly debated and deeply divided four-to-three vote. Rather than perpetuate what we believe to be an unfair and legally unjustifiable conclusion in High, we have chosen to overrule that decision in favor of the law set forth herein. Our critics may wish to perpetuate an anachronistic and sterile view of the relationship between parents and children, but we seek to distance ourselves from that viewpoint. Either the common law must be modernized to conform with present-day norms, or it will engender a lack of respect as being out of touch with the realities of our time.

For the foregoing reasons, we affirm the judgment of the court of appeals. We further order that our holdings today be applied only prospectively and, of course, to the case at bar.

                                        Judgment affirmed.

A.W. Sweeney, F.E. Sweeney and Pfeifer, JJ., concur.
Moyer, C.J., Wright and Wolff, JJ., dissent.
William H. Wolff, Jr., J., of the Second Appellate District, sitting for Resnick, J.

FOOTNOTES:
1    Appellee alleged in her amended complaint that, as a consequence of CHMC's negligence, "[p]laintiff has been deprived and will be deprived permanently of the full relationship and consortium with her son Joshua that she would have enjoyed but for [CHMC's] negligence."
2    With respect to appellee's general damages for loss of

filial "consortium" or "society," the trial court had instructed the jury, in pertinent part:

"* * * [I]f you find for the plaintiffs, you will consider and include an amount that will reasonably compensate Joshua Ray Best's mother, Jo Ann Gallimore, for damages which you find have resulted or will result from what we call a loss of society with Joshua Ray Best.

"* * *

"Society consists of communications, companionship, and comfort between a parent and child."

3    Judgment should have been rendered for $1,060,993.

4    The court of appeals found that R.C. 2307.43 violated several provisions of the Ohio Constitution for the reasons set forth in Justice A. William Sweeney's concurring and dissenting opinion in Savoy, supra, 61 Ohio St.3d at 700-709, 576 N.E.2d at 777-783.

5    The parties to this appeal disagree whether the court of appeals remanded this cause to the trial court for a redetermination of all damages, special and general, or just for an assessment of the additional general damages (if any) to which appellee and Joshua would be entitled had R.C. 2307.43 not been applied.  In this regard, it is clear to us from a reading of the court of appeals' opinion (and from the relief requested by appellee in her cross-appeal in the court of appeals) that the appellate court did not vacate any damage award in this case.  In our judgment, the appellate court remanded the cause to the trial court for further proceedings to determine whether appellee and Joshua are entitled to general damages in addition to those already awarded.

6    R.C. 2125.02 currently provides, in part:

"(A)(1)  Except as provided in this division, an action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent.  * * *

"* * *

"(B)  Compensatory damages may be awarded in an action for wrongful death and may include damages for the following:

"(1)  Loss of support from the reasonably expected earning capacity of the decedent;

"(2)  Loss of services of the decedent;

"(3)  Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, minor children, parents, or next of kin;

"(4)  Loss of prospective inheritance to the decedent's heirs at law at the time of his death;

"(5)  The mental anguish incurred by the surviving spouse, minor children, parents, or next of kin."

7    The Complete Plays of Gilbert and Sullivan (1938) 110, H.M.S. Pinafore, Act I.

8    See, e.g., Smith v. Richardson (1965), 277 Ala. 389, 171 So.2d 96; Baxter v. Superior Court (1977), 19 Cal.3d 461, 138 Cal. Rptr. 315, 563 P.2d 871; Dralle v. Ruder (1988), 124

Ill.2d 61, 529 N.E.2d 209; Norman v. Massachusetts Bay Transp. Auth. (1988), 403 Mass. 303, 529 N.E.2d 139 (superseded by statute); Sizemore v. Smock (1988), 430 Mich. 283, 422 N.W.2d 666; Butler v. Chrestman (Miss. 1972), 264 So.2d 812; Powell v. Am. Motors Corp. (Mo. 1992), 834 S.W.2d 184; Siciliano v. Capitol City Shows, Inc. (1984), 124 N.H. 719, 475 A.2d 19; Boucher v. Dixie Med. Ctr. (Utah 1992), Utah Sup. Ct. No. 900476, unreported, 1992 WL 203120; Heidt v. Heidt (Nev. 1992), 842 P.2d 723; Gates v. Richardson (Wyo. 1986), 719 P.2d 193; Wilson v. Galt (N.M. App. 1983), 100 N.M. 227, 668 P.2d 1104; and Gilbert v. Stanton Brewery, Inc. (1946), 295 N.Y. 270, 67 N.E.2d 155.

9    See, generally, Shockley, supra; Norvell, supra; Howard Frank, M.D., P.C., supra; Reben v. Ely (App. 1985), 146 Ariz. 309, 705 P.2d 1360; Yordon v. Savage (Fla. 1973), 279 So.2d 844; and Masaki v. Gen. Motors Corp. (1989), 71 Haw. 1, 780 P.2d 566.

Pfeifer, J., concurring.   In 1982, in response to this court's continued adherence to outdated precedent, the General Assembly specifically amended Ohio's wrongful death statute to allow for the recovery of damages for loss of consortium, including filial consortium. See R.C. 2125.02(B)(3); 139 Ohio Laws, Part II, 2458, 2460.  Today, we recognize that recovery of damages for filial consortium is not limited to wrongful death cases, but is also permissible in personal injury cases.   I fully support the syllabus and the entirety of the majority opinion of Justice Douglas.

The role of the judiciary vis-a-vis the General Assembly is the major bone of contention between the majority and the dissents in this case.  Two of the dissents cling to this court's decision in High v. Howard (1992), 64 Ohio St. 3d 82, 85, 592 N.E.2d 818, 820, which rests in large part on the High majority's belief that "the responsibility for changing public policy to permit recovery for loss of parental consortium rests with the General Assembly, not this court." Id. at 85, 592 N.E.2d at 820.  The third dissent, too, urges this court to "defer to the legislature on whether there should be such a right of recovery."

To await action by the General Assembly, however, would be to deny our own constitutional responsibility to injured persons like Ms. Gallimore.  The judiciary historically has been regarded as the appropriate institution to delineate the proper measure of damages for personal injury claims.  The High majority seemed entranced into inaction by the General Assembly's move to expand the scope of recoverable damages in wrongful death actions from mere "pecuniary injuries" to possible damages for loss of support, loss of services, loss of prospective inheritance, loss of society, and mental anguish. Id., 64 Ohio St.3d at 85, 592 N.E.2d at 820.  The High reasoning appears to have been that since the General Assembly has recognized filial consortium in wrongful death actions, the General Assembly also should be the institution to recognize such damages in personal injury cases.

However, unlike damages for wrongful death, which have been guided by statute since 1851, damages for loss of consortium have historically evolved as a creature of the common law.  While the development of the common law has been

glacier-paced --for example, prior to this court's decision in Clouston v. Remlinger Oldsmobile Cadillac, Inc. (1970), 22 Ohio St. 2d 65, 51 O.O.2d 96, 258 N.E.2d 230, a wife did not have a cause of action for damages against a person who negligently injured her husband -- it is nevertheless a product of Ohio's judiciary.  This court therefore is the appropriate body to determine permissible damages in personal injury cases and to allow for recovery of damages for loss of filial consortium where justified by the profound loss suffered.

Ohio's modern wrongful death statute should thus be viewed by this court as a guide, not as a roadblock.  That legislation is a signal that our society has recognized that the wrongful death of a parent or child results in compensable damages, the amount of which cannot be determined by consulting the ledger book.  That legislation should have been a signal that the common law needs to change incrementally with the changing sensibilities of a people.  The General Assembly has responded to those changing sensibilities by applying them in an area of the law which they have historically shaped; this court should not sit stonelike when we are presented with a case that demands the same.

The "leave it to the legislature" philosophy is the reason that I am not at all disturbed by any negative implications to stare decisis created by our decision to overturn High v. Howard.  This court has stated that "the rule of stare decisis is applied with varying force depending on the specific type of precedent involved," with precedent involving statutory interpretation being the most sacrosanct.  Rocky River v. State Emp. Relations Bd. (1989), 43 Ohio St.3d 1, 6, 539 N.E.2d 103, 108.  I view the majority's position in High as a decision not to decide.  That is not the type of decision that merits great value as precedent.

Moyer, C.J., dissenting.   Blackstone said it in his Commentaries when he observed, "[p]recedents and rules must be followed, unless flatly absurd or unjust[.]"  1 Blackstone, Commentaries on the Laws of England (1765) 70.

Oliver Wendell Holmes said it in Summary of Events (1873), 7 Am.L.J. 579, when he observed, "We sincerely hope that the editors [of the American Civil Law Journal] will fail in their expressed desire to diminish the weight of precedents with our courts.  We believe the weight attached to them is about the best thing in our whole system of law."

Benjamin N. Cardozo said it in The Paradoxes of Legal Science (1928) 29-30: "What has once been settled by a precedent will not be unsettled overnight, for certainty and uniformity are gains not lightly to be sacrificed.  Above all is this true when honest men have shaped their conduct upon the faith of the pronouncement."  And Felix Frankfurter in Helvering v. Hallock (1940), 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604, 612, said, "We recognize that stare decisis embodies an important social policy.  It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations."

These statements regarding stare decisis need no elaboration except to say that they enunciate a fundamental element of American jurisprudence -- consistency and predictability.  To be sure, there are exceptions: "[S]tare

decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience." Helvering v. Hallock, supra, 309 U.S. at 119, 60 S.Ct. at 451, 84 L.Ed. at 612. But this is not a case for an exception.

One year ago, this court announced that a child does not have a cause of action for loss of consortium against a third-party tortfeasor who negligently or intentionally injures the child's parent. High v. Howard (1992), 64 Ohio St.3d 82, 592 N.E.2d 818. Today, the majority announces that the law of Ohio has taken a one-hundred-eighty-degree turn, in part because "High was decided by a hotly debated and deeply divided four-to-three vote." Deep divisions and hot debates are the cauldron in which many decisions of courts of last resort are produced. The ease with which the majority has discarded a decision of this court, one that followed the majority view in the country, is not a good sign for judges, lawyers and others who look to the Supreme Court not only for pronouncements but for stability and predictability in the law.

I disagree also with the rationale upon which the issue before us in this case was decided. Perhaps it is, as the majority asserts, "anachronistic" and "out of touch with the realities of our time" to suggest, as other courts have suggested, that we should not ask jurors to place some monetary value upon the loss or diminution of a child's expressions of love and affection for his or her parents. Must we convert to cash value every human relationship? Can a parent make a monetary comparison between the love and affection of a child who can hear with the love and affection of a child who is deaf? In my view, the courts that have said such evaluations are inappropriate are more closely in touch with the realities that really matter than is the majority.

I would reverse the judgment of the court of appeals to the extent that it is inconsistent with this dissent.

Wright, J., concurs in the foregoing dissenting opinion.

Wright, J., dissenting. In the Leviathan, Thomas Hobbes wrote that life is "solitary, poor, nasty, brutish, and short." Id. at Pt. I, Ch.13. Although it has improved dramatically since 1651, life remains at times most difficult and bad things continue to happen to good people. Regardless of how hard the members of this court may try, we cannot change the reality that in life people suffer injuries that are manifestly irreparable -- but we do not necessarily make life better by allowing people to seek financial compensation for every tragedy they suffer. One of the tragedies that money simply cannot cure is the emotional pain caused by an injury to one's child. I speak from experience on this issue.

I disagree with the majority in four respects. First, I believe that the majority abused its role in our judicial system by overruling recent precedent. The majority compounds this error by doing so in dicta. Second, I believe that the majority is disingenuous when claiming that it is not creating a new right but is simply recognizing an existing one. Third, I believe that we should not now recognize a cause of action for loss of parental consortium. Fourth, although the majority

indicates some unwillingness to extend its holding to other relatives of an injured child, it gives no reason or guidance for this limitation, and its reference to Gilbert and Sullivan is particularly unhelpful.

I

Today, the court has overruled a case decided but one year ago. See High v. Howard (1992), 64 Ohio St.3d 82, 592 N.E.2d 818. The principal reason that the court reaches a result different than it did last June is that the personnel of the court has changed. Of course the law must evolve and develop over time, but today's decision is not a product of either evolution or development.

Predictablility and consistency are highly valued in our judicial system. In making decisions regarding their affairs, both businesses and individuals rely on this court's recent judgments and opinions as authoritative statements of the law. Many of our opinions are truly important in that they deal directly with the everyday activities of normal people. For example, our opinions have demarcated the line between free speech and libel, informed parties what sort of agreements cannot be enforced for public policy reasons, and, as in this case, made people (and their insurance carriers) aware of the extent to which they can be held liable for a negligent act. When we decide a case without even a bow toward precedent, we tell people that they cannot rely on our decisions because we may change our minds at any time and without warning. Not only does this prevent people from rationally planning their lives, but it seriously erodes the integrity of this court and the authority of our decisions.

There are certain times that precedent should be overruled, but not simply at the whim of an ever-changing court. In my view, precedent should be overruled in two situations. First, a decision should be overruled when the political, economic, or social assumptions upon which it was based have materially changed; a prior decision may no longer be valid if those assumptions are no longer viable. Second, a decision announcing a particular rule, precept, or approach should be overruled if the court later finds that, when applied in the real world, that rule, precept, or approach is unworkable or leads to untoward results. Neither of these two circumstances has been suggested in this case. The assumptions upon which High was based have not changed in the one year since it was decided and it has not been argued that the rule of High is unworkable or has led to unintended results.

A related concern is that the validity of High was not actually presented to the court in this case. Indeed, the majority overrules High in dicta. The issue in High was whether a child could maintain a cause of action for loss of parental consortium. The issue in this case is whether a parent can maintain a cause of action for loss of filial consortium. While closely related, the issues are clearly different. By using this case to overrule High, the majority acts as a legislature rather than as a court. The General Assembly may act on any issue that concerns the peace, morals, health, or safety of the people of Ohio. This court, however, is constitutionally limited to deciding only issues directly presented by an individual case. The issue of whether a child

can recover for loss of parental consortium is not presented by this case and should not have been reached by the majority.10

Finally, our system of government is designed to be responsive to court decisions that run contrary to the popular will. If a court's interpretation of the law is perceived to be incorrect, the legislature is free to respond by changing the law. See, e.g., Civil Rights Act of 1991, 105 Stat. 1071, Pub.L. 102-166, Section 1981 note, Title 42, U.S. Code (overruling Wards Cove Packing Co. v. Atonio [1989], 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733).11

I believe that once a court purports to settle a question of law, it is for the legislature, not this court, to change the law unless one of the two circumstances set forth above occurs. With regard to the question of whether loss-of-consortium damages are available, legislative action is particularly appropriate. The High majority wrote: "the General Assembly may create a new cause of action for loss of parental consortium in cases where a parent is injured but survives the negligent or intentional conduct of a third-party tortfeasor. There is no better example of an issue that should be determined by the legislative process where arguments in support of and opposed to the proposed remedy may be fully aired and debated." High, supra, at 85, 592 N.E.2d at 820. See, also, Powell v. Am. Motors Corp. (Mo. 1992), 834 S.W.2d 184, 185 ("If Missouri is to recognize a cause of action for loss of consortium by the children or the parents of an injured party, the decision to do so should be made by the legislature and not by this Court."). Given the complexity of this issue and the fact that our case law runs strongly against creation of a right to recover for loss of filial consortium, I firmly believe that the decision to recognize this cause of action should have been left to the General Assembly.

Today's abrogation of legislative power solves little. As stated above, in High v. Howard we expressly extended to the General Assembly an invitation to address the issue of loss of consortium as between parents and children. With today's decision we simply ignore the fact that the legislative body has chosen to take no action. In our modern legal system, with all of its subtle nuances and fine lines, it is the legislature and not this court that is better equipped to make the decision as to whether new causes of action should be recognized. My hope is that the General Assembly will react to today's classic example of judicial legislation.

II

I also must take strong exception to the majority's unsupportable assertion that it is "not creating a new right" but rather "rediscovering a right that has apparently always existed but has never been given full life by this court." First, I am not at all sure what a "full life" means. Second, the majority does not cite a single case from this court that has permitted a parent to recover for loss of filial consortium. Rather, the majority takes us on a twisting journey through our precedent, hoping, I suppose, that the reader will become too confused to question the majority's ultimate conclusion.

In "rediscovering" the right to recover for loss of filial consortium, the majority cites fives cases decided by this

court.  In Grindell v. Huber (1971), 28 Ohio St.2d 71, 57 O.O.2d 259, 275 N.E.2d 614, and Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, we specifically held that when a minor child is injured by the negligence of another "that single wrong gives rise to two separate and distinct causes of action:  an action by the minor child for his personal injuries and a derivative action in favor of the parents of the child for the loss of his services and his medical expenses." (Emphasis added.)  Whitehead, supra, at paragraph three of the syllabus.  See, also, Grindell, supra, paragraph one of the syllabus.  Neither of these cases directly addressed the issue of whether a parent could recover for loss of filial consortium.12  However, the syllabus language of these cases appears to clearly indicate that the court believed the parent's right to recovery to be limited to two areas:  (1) loss of services, and (2) medical expenses.

Nor did Kane v. Quigley (1964), 1 Ohio St.2d 1, 30 O.O.2d 1, 203 N.E.2d 338, involve the question of whether a parent could recover for loss of filial consortium.  The issue in Kane was whether a child could sue a female "enticer" for loss of the father's consortium.  Kane certainly did not suggest that a parent could seek loss-of-consortium damages.  In fact, Kane broadly stated just the opposite:  "No right of consortium exists between a parent and a child." (Emphasis added.)  Kane, supra, at 3, 30 O.O.2d at 2, 203 N.E.2d at 339.

In Keaton v. Ribbeck (1979), 58 Ohio St.2d 443, 12 O.O.3d 375, 391 N.E.2d 307, the issue was whether the term "pecuniary injury" in Ohio's wrongful death statute included "loss of society, comfort and companionship of the decedent."  The court held that it did not.  We also expressly observed that no decisions of this court had permitted a parent to seek damages for loss of a child's society, companionship, or comfort.  Id. at 445, 12 O.O.3d at 376, 391 N.E.2d at 309.

In reaching its conclusion, the majority relies on the ancient case of Clark v. Bayer (1877), 32 Ohio St. 299.  It writes that a "careful reading of *** Clark *** reveals a recognition by this court *** that such losses might constitute compensable elements of damage."  This suspiciously circumscribed description of Clark is quite misleading.  What is true about Clark is, unlike the other Ohio Supreme Court cases the majority cites, it does not specifically reject damages for loss of filial consortium.  The most relevant passage in Clark states:

"The right to the custody of the infants, and their services as an incident thereto, is the gravamen of the action.  Actual loss of services is not an essential allegation to enable plaintiff to maintain his action.

"But whether damages, other than compensatory, may be recovered, we do not say, for the reason that such question is not necessarily before us now for determination." (Emphasis added.)  Id. at 312-313.

A fair reading of Clark merely reveals the common-law rule that a parent (or guardian) could recover for loss of a child's services.  The majority writes, however, that the view that parents could recover for loss of a child's "services" is "stagnant and antiquated" and should be abandoned.  Given this

language, I find it curious indeed that the majority -- right in the syllabus -- permits parents to continue to recover for loss of a child's services. If this view truely "harks back to the days when children were thought to have little or no social value other than as laborers and wage-earners," I would expect the majority would be in a great hurry to abandon it.

I confess that I also do not understand the majority's logic when it states that, in Clark, loss of "services" meant the same thing as loss of "consortium." Clark does not say that at all: its plain language is clearly limited to recovery for loss of "services," the word "consortium" had a specific and generally used meaning at the time Clark was decided,13 and the Clark court expressly stated that it did not reach the question of what damages were actually recoverable. In short, the Clark court did not hold that a parent could recover damages for loss of filial consortium; if it had meant so, it would have said so.

After reviewing these five decisions, the majority leads itself to the conclusion "that none of our cases has ever prohibited the parent of a non-fatally injured child from maintaining a derivative action against a third-party tortfeasor for the parent's loss of filial society, comfort, companionship, etc." This means, simply, that this court has never recognized a right to recover for loss of filial consortium. But, not five sentences later, the majority somehow turns this non-recognition into an "apparently long-existing right."

Ironically, the majority's disposition of this case belies its claim that it is not creating a new right. It orders that its holdings be applied prospectively. Query whether a "long-existing" right should be recognized "only prospectively"?

The truth is that today, for the first time ever, this court recognizes a right to maintain a cause of action for loss of filial consortium. In doing so we depart from the clear direction of our precedent and the weight of authority from our sister states. If this is what the majority intends, so be it. It is unfortunate, however, that the majority misrepresents the state of the law, here and elsewhere, in an attempt to justify its position.

### III

The majority attempts to quash potential dissent by using the rhetorical equivalent of a high, inside fastball to keep those who might disagree away from the plate. It describes the point of view it rejects as "anachronistic," "sterile," and "out of touch with the realities of our time." This mean-spirited characterization would no doubt be resented by jurists on, for example, the California, Illinois, Missouri, and Michigan high courts who have adopted just that position.14 In fact, given the line-up of courts that has refused to recognize a filial consortium cause of action under the common law compared to the relatively few courts that have, I suggest that it may be the majority that is out of touch. Not only has it stepped out of the judicial mainstream, but it has paddled almost to the Pacific Rim to find the one recent state supreme court case supporting its view.15

Courts in other states have cited numerous persuasive

reasons that a cause of action for loss of filial consortium should not be recognized.  The major points were well summarized by the California Supreme Court in Baxter v. Superior Court of Los Angeles Cty. (1977), 19 Cal.3d 461, 464, 138 Cal. Rptr. 315, 317, 563 P.2d 871, 873:  "The intangible character of the loss, which can never really be compensated by money damages; the difficulty of measuring damages; [and] the dangers of double recovery of multiple claims and of extensive liability."

Realistically, all must acknowledge that an accurate calculation of damages for loss of filial consortium is next to impossible.  See Sizemore v. Smock (1988), 430 Mich. 283, 294-295, 422 N.E.2d 666, 671-672.  Jurors are unable to make the cold calculation of how many dollars a child's love and companionship are worth to a parent.  Moreover, in light of the intangible nature of the loss, it is unrealistic to expect a juror "to distinguish between the child's claim, involving pain and suffering, and the legally distinct but factually similar claim by the parents for loss of the child's society and companionship."  Dralle v. Ruder (1988), 124 Ill.2d 61, 70, 124 Ill. Dec. 389, 529 N.E.2d 209, 213.  Thus, I fear that juries will treat damages for loss of filial consortium as a form of punitive damages.  Such damages simply will be used to punish unworthy or poorly represented defendants or to reward particularly sympathetic plaintiffs.

I am also concerned that recognition of another tort will result in higher insurance costs being passed on to the public.  "Realistically, the burden of payment for additional consortium awards will be borne by the general public through the assessment of increased insurance premiums ***."  Sizemore, supra, at 295, 422 N.W.2d at 672.  See, also, Borer v. Am. Airlines, Inc. (1977), 19 Cal.3d 441, 447, 138 Cal.Rptr. 302, 306, 563 P.2d 858, 862.  While this reason alone is certainly not sufficient to decline to recognize a cause of action, combined with the other factors it further tips the scale against recognizing filial consortium damages.

Today's decision also arbitrarily extends loss of consortium from spouses to parents and children.   Other relatives of a child may have the same close relationship that a parent has with a child; it is simply a matter of proof.  "Grandparents, siblings, and others with close emotional ties to a negligently injured plaintiff undoubtedly would be able to posit an argument just as logical and sympathetic as the parent or child for protection of their consortium interests by recognition of similar action in their favor."  Sizemore, supra, at 296, 422 N.W.2d at 672.

My final, and deepest, objection to recognizing a cause of action for loss of filial consortium is that it "impose[s] higher costs without actually remedying the loss."  Prosser & Keeton on Torts (5 Ed.1984) 934.  As a father, I know how much an injury to a child can hurt a loving parent.  No amount of money could stop or even reduce that pain.  It saddens me that as a society we often believe that money can make everything better.  By recognizing this cause of action, my colleges turn personal tragedy into a stroke of financial good-fortune for a grieving parent and, of course, his or her counsel.  But courts -- merely instruments of government -- have no mystical,

divine, or other-worldly ability to alleviate a parent's grief.  The majority writes that allowing a parent to seek monetary damages is the best we can do.  I think not, as there is really nothing we can, or indeed should, do.

Accordingly, I respectfully dissent.

FOOTNOTES:

10  It is notable that the majority dismisses the holding of Kane v. Quigley (1964), 1 Ohio St.2d 1, as having "no precedential value in cases such as the one now before us" because it involved a child seeking damages for loss of parental consortium.  The majority thus recognizes that the question of loss of parental consortium and the loss of filial consortium are distinguishable.  Why it chooses to ignore its own observation and overrule High, which also involved loss of parental -- not filial -- consortium, is simply beyond me.

11  The Massachusetts legislature, for example, responded to a Massachusetts Supreme Judicial Court ruling that parents could not seek damages for loss of filial consortium by enacting a statute specifically allowing such a cause of action.  See Mass. G.L. c.231, Section 85X (overruling Norman v. Massachusetts Bay Transp. Auth. [1988], 403 Mass. 303, 529 N.E.2d 139).  In addition to Massacusetts, other state legislatures have enacted statutes specifically allowing a parent to recover consortium damages for negligent injury to a child.  See Idaho Code 5-310; Iowa Code Ann., Rules of Civil Procedure, Rule 8; Wash. Rev. Code 4.24.010.

12  Whitehead concerned the question whether a child was collaterally estopped from bringing an action against a defendant his parent had already sued.  Grindell concerned whether a defendant could be held liable to a parent for the child's medical expenses if it is found that the defendant is not liable for the child's injuries.

13  The term "consortium," as distinguished from "services," was well known to the judges who decided Clark. One year after Clark v. Bayer was decided, this court discussed at length and in detail the nature of a common-law action for loss of consortium.  Westlake v. Westlake (1878), 34 Ohio St. 621.  It is notable that Clark v. Bayer was not cited even once in the Westlake opinion's discussion of loss of consortium.

14  Baxter v. Superior Court of Los Angeles Cty. (1977), 138 Cal. 3d 461, 138 Cal. Rptr. 315, 563 P.2d 871; Dralle v. Ruder (1988), 124 Ill.2d 61, 124 Ill.Dec. 389, 529 N.E.2d 209; Powell v. Am. Motors Corp. (Mo. 1992), 834 S.W.2d 184; Sizemore v. Smock (1988), 430 Mich. 283, 422 N.W.2d 666.

15  See majority opinion at fn.9 (citing Masaki v. Gen. Motors Corp. [1989], 71 Haw. 1, 780 P.2d 566).

Wolff, J., dissenting.  I dissent, but not for all of the reasons expressed by Chief Justice Moyer and Justice Wright.

A parental right to recover damages for loss of the filial consortium of a nonfatally injured child may well be a salutary addition to our substantive law.

I am not persuaded that such a right of recovery would create unmanageable problems.  If a jury can be expected to assign a monetary value to loss of spousal consortium, it can likewise be expected to assign a monetary value to a loss of filial consortium.  Concerns about "devaluing" a living child

to establish a loss of filial consortium should be no different than concerns about devaluing a living spouse to establish a loss of spousal consortium. The class of claimants can be limited to parents. The danger of "double recovery" can be avoided through proper jury instructions.

Nevertheless, I agree with Justice Wright that the majority is creating a new right of recovery rather than merely recognizing an already existing one. While this court certainly has the power to declare the substantive law of this state, I believe the more prudent course would be to defer to the General Assembly on whether there should be a parental right of recovery for loss of filial consortium of a nonfatally injured child. If there is incongruity between the treatment of parents of fatally and nonfatally injured children resulting from the Wrongful Death Act, the General Assembly can rectify the situation if it perceives it to be unjust.

In overruling High v. Howard (1992), 64 Ohio St.3d 82, 592 N.E.2d 818, the majority also creates a new right of recovery in children for a loss of parental consortium. In my judgment, the prudent course would again be to defer to the legislature on whether there should be such a right of recovery.

A right of recovery for loss of filial consortium and a right of recovery for loss of parental consortium are both prompted by the same policy consideration: that the parent-child relationship is a special one, and that either the parent or the child should have a right to recover damages for the loss of the consortium of the other if caused by a third-party tortfeasor. These two rights of recovery should either both exist, or neither should exist.

The General Assembly is the preferable forum for determining whether these new rights of recovery are wise policy for Ohio.

Wright, J., concurs in the foregoing dissenting opinion.