OPINION
Plaintiffs, Richard M. and Deborah J. Thompson, as parents and guardians of their minor child, Megan K. Thompson, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant, Nationwide Mutual Insurance Company ("Nationwide").
On December 9, 1995, Megan K. Thompson, a passenger in an automobile negligently driven by defendant, Melisa Olinn, sustained serious physical injuries when the automobile was involved in a collision. At the time of the accident, Olinn was insured under an automobile policy of insurance through Erie Insurance Company ("Erie") with bodily injury liability limits of $300,000. Plaintiffs were covered by an automobile policy originally issued by Nationwide on June 22, 1994. The policy included a provision for uninsured/underinsured motorist ("UM/UIM") coverage with limits of $100,000 per person and $300,000 per occurrence. Plaintiffs subsequently renewed the policy on December 22, 1994 and June 22, 1995.
As of June 22, 1994, Ohio law provided that "[a]n underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers." Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, paragraph three of the syllabus. The effect of Savoie was to allow individuals covered by a UM/UIM policy to collect up to the full limits of the policy to the extent that their damages exceeded the amounts paid by the tortfeasor's insurer. Savoie
also held, at paragraph four of the syllabus, that "[e]ach person who is covered by an uninsured/underinsured policy and who is presumed to be damaged pursuant to R.C. 2125.01 has a separate claim subject to a separate per person policy limit."
After Savoie, the Supreme Court of Ohio held in Schaeferv. Allstate Ins. Co. (1996), 76 Ohio St.3d 553, syllabus, that "[e]ach person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person limit. * * *" Schaefer
extended the Savoie holding to loss of consortium claims, finding no valid reason to distinguish between statutory wrongful death actions and common law loss of consortium claims in personal injury cases. Schaefer, at 557-558. Accordingly, the Supreme Court held that policy language limiting loss of consortium claims to a single per person limit was unenforceable. Id. at syllabus.
In response to the Supreme Court's decision in Savoie, the Ohio General Assembly, on October 20, 1994, enacted Am.Sub.S.B. 20, which amended the UM/UIM statute, R.C. 3937.18. Under the amendment, an insured's UM/UIM coverage is available only when the tortfeasor's policy limits are less than the limits of the insured's UM/UIM coverage. R.C. 3937.18(A)(2). Further, pursuant to R.C. 3937.18(H), any automobile policy of insurance that included UIM coverage, may, notwithstanding R.C. Chapter 2125, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, are collectively subject to the limit of the policy applicable to bodily injury and death sustained by one person and, for the purposes of such policy limit, constitute one single claim.
On January 24, 1997, plaintiffs, both individually and on behalf of their daughter, filed a complaint seeking damages against several defendants, including Nationwide. The complaint alleged, inter alia, claims against Nationwide for full UM/UIM policy limits.
On June 11, 1997, Erie paid $225,000 of its policy limits to plaintiffs. Four other individuals injured in the accident received a total of $75,000, which exhausted the limits of the Erie policy. After this settlement, the only claims remaining were plaintiffs' UM/UIM claims against Nationwide.
On May 1, 1998, Nationwide filed a motion for summary judgment in which it argued that under the law in effect at the time of the accident on December 9, 1995, plaintiffs were not entitled to UM/UIM coverage because Olinn's liability coverage exceeded the $100,000 per person limit of plaintiffs' UM/UIM coverage. Nationwide also maintained that Mr. and Mrs. Thompson's derivative claims were precluded because the policy contained a provision consolidating all of the claims arising out of the bodily injury suffered by Megan into a single claim. Plaintiffs opposed the motion, arguing that the law in effect prior to the enactment of S.B. 20, as enunciated in Savoie, governed their claim because plaintiffs entered into the insurance contract with Nationwide prior to the enactment of S.B. 20.
Shortly after plaintiffs filed their memorandum contra Nationwide's motion for summary judgment, the Ohio Supreme Court decided the case of Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281. The syllabus of Ross provides as follows:
 For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.
Ross rejected the theory that an insured who had contracted for UM/UIM coverage was required to exhaust all claims against the tortfeasor before a UM/UIM cause of action against the insured's own carrier accrued. Instead, the court agreed with the proposition that when a contract of insurance for automobile liability insurance is entered into or renewed, the statutory law in effect at the time of contracting or renewal defines the scope of UM/UIM coverage. Id. at 287. Further, the court concluded that the only instances in which S.B. 20 could be incorporated into an insurance policy without impairing the obligation of contract would be if a new contract of insurance had been entered into, or a renewal of the existing policy (representing a new contract of insurance) had occurred after the enactment of S.B. 20.
On August 27, 1998, plaintiffs filed a "Notice of Supplemental Authority," urging the trial court to apply the holding in Ross to plaintiffs' case. Specifically, plaintiffs argued that Savoie controlled because the policy was issued prior to the enactment of S.B. 20 and, pursuant to R.C. 3937.31,[1]
the policy was guaranteed renewable for two years, or until June 22, 1996, which was after the date of the accident. Plaintiffs argued that the renewals did not constitute "new contracts" because the renewal information contained in the policy expressly set forth that the policy did not terminate for two years after its original date.
On September 15, 1998, the trial court issued a decision granting Nationwide's motion for summary judgment. Relying onHillyer v. State Farm Mut. Auto Ins. Co. (Sept. 18, 1997), Cuyahoga App. No. 71724, the trial court found that plaintiffs' claims were governed by the law which existed at the time of the accident. According to the trial court, because plaintiffs' cause of action did not accrue until the date of the underlying accident, December 9, 1995, which was after the effective date of S.B. 20, the version of R.C. 3937.18 enacted as part of S.B. 20 controlled the disposition of plaintiffs' claims. The court also found that the Ross decision did not support plaintiffs' position. Although not expressly stated, it appears that the trial court found that the policy renewals which occurred on December 22, 1994, and June 22, 1995, constituted new contracts of insurance. Accordingly, the trial court found that application of R.C.3937.18, as amended by S.B. 20, barred plaintiffs' claims. The trial court's decision was journalized by entry filed November 13, 1998. Plaintiffs appeal, advancing a single assignment of error:
 The Trial Court Erred, To The Prejudice Of The Appellants, In Rendering Summary Judgment In Favor Of Appellee Nationwide Mutual Insurance Company ("Nationwide") And In Dismissing the Appellants' Uninsured/Underinsured Motorists Claims Against Nationwide On The Basis that Such Claims Were Barred Under R.C. 3937.18.
In support of this single assignment of error, plaintiffs set forth the following seven sub-arguments:
 Entry of summary judgment in favor of Appellee Nationwide was improper since it was not entitled to judgment as a matter of law.
 Since the Thompson Insurance Policy with Nationwide was effective on June 22, 1994, prior to the enactment of Senate Bill 20, the Ohio Supreme Court's recent decision in Ross v. Farmers Ins. Group of Companies, 82 Ohio St.3d 281 (1998), made Savoie v. Grange Mutual Ins. Co., 67 Ohio St.3d 500 (1993), controlling in the present case.
 The Trial Court erroneously relied on the case of Hillyer v. State Farm Mutual Insurance Company, Cuy. App. No. 71724, 1997 Ohio App. LEXIS 4246 (Sept. 18, 1997), a case which has been reversed by the Supreme Court of Ohio. Hillyer v. State Farm Mutual Insurance Company, 82 Ohio St.3d 386 (1998).
 Since Plaintiffs Richard and Deborah Thompson were covered by the Nationwide Uninsured/Underinsured Motorist Policy and asserted separate loss of consortium claims, they had separate claims under that policy. Gallimore v. Children's Hosp. Medical Ctr., 67 Ohio St.3d 244, (1993), Savoie v. Grange Mutual Ins. Co., 67 Ohio St.3d 500 (1993), and Molek v. State Farm Mutual Auto Ins. Co., 77 Ohio St.3d 392
(1997).
 As a matter of public policy, since the language in the Thompsons' Insurance Policy was ambiguous, the Policy should have been strictly construed against its drafter, Nationwide, in favor of coverage.
 Even assuming, arguendo, that Nationwide was correct in asserting that the policy language in question purports to preclude any recovery by Plaintiffs Richard and Deborah Thompson and any further recovery by Megan Thompson, such language is contrary to public policy and unenforceable
 Adoption of the position taken by Nationwide and the trial court in this matter denied the Plaintiffs their Constitutional Rights to a remedy and justice[.]
In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that applied by the trial court. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711. Before summary judgment may be granted under Civ.R. 56(C), the trial court must determine that: "* * * no genuine issues as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. * * *" State ex rel. Parsons v. Fleming
(1994), 68 Ohio St.3d 509, 511, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. In this case, no genuine issues of material fact remain to be litigated. The sole issue on appeal is whether Nationwide was entitled to judgment as a matter of law.
Initially, we note that on July 22, 1998, Hillyer was reversed by the Ohio Supreme Court on the authority of Ross.Hillyer v. State Farm Mut. Auto. Ins. Co. (1998), 82 Ohio St.3d 386. Plaintiffs assert that because the trial court placed some reliance on Hillyer in precluding their claim, this court should reverse the court's grant of summary judgment for Nationwide now that Hillyer has been reversed. We do not agree. Although the trial court erred in applying Hillyer to find that plaintiffs' claims were governed by the law in existence at the time of the accident, such error was harmless, given that the trial court proceeded to an analysis of plaintiffs' claims under Ross.
 Ross did not address the distinction between the initial issuance of a policy and a subsequent renewal of the policy because in Ross, the contract of insurance and the accident both occurred before the enactment of S.B. 20. However, Ross relied upon Benson v. Rosler (1985), 19 Ohio St.3d 41, a case which discussed to what extent a renewal represents a new contract of insurance. In Benson, the insurance policies were issued on May 6, 1980, and contained anti-stacking language. At the time the policies were issued, the law as pronounced in Grange Mut. Cas.Co. v. Volkmann (1978), 54 Ohio St.2d 58, prohibited anti-stacking provisions in insurance policies as being contrary to public policy. On June 25, 1980, some six weeks after the policies were issued, the General Assembly enacted R.C. 3937.181(E), which superseded Volkmann by allowing anti-stacking language. Thereafter, the policies were renewed for three subsequent six-month periods, with the last renewal occurring on November 6, 1981. During the renewal periods, the insurer issued no endorsements and did not negotiate with the insureds about any modification of the contract. The accident occurred on November 13, 1981.
The Benson court found that the anti-stacking law in effect at the time of the renewals became a part of the policies and "gave lawful force to the language as contained within the original relative to the stacking of insurance." Id. at 45. In so finding, the Supreme Court stated that "[s]tatutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy." (Emphasis added.) Id. at 44.
In determining whether the renewal represented a new contract of insurance separate from the original policy, the Supreme Court noted that the policy was issued for an original duration of six months with the insurance company holding the option to renew for subsequent terms to the extent permitted by R.C. 3937.31. The Supreme Court further noted that the policy in question set a specific expiration date and time; that the option to renew was to be exercised by the company by sending a bill for the renewal premium; and that renewal was contingent upon the insured paying the premium in advance of the renewal date. The Supreme Court concluded that notwithstanding the two-year guarantee of R.C. 3937.31(A), "such policies, when written for specific periods, may be considered term policies rather than continuing policies. * * *" (Emphasis added.) Id.
The emphasized portions of the above-quoted comments suggest that the Supreme Court did not intend that every renewal must be considered a new contract. Rather, a renewal "may" be considered a new contract, depending upon the specific terms of the policy.
Since Ross was decided in July 1998, the issue of whether a policy renewal constitutes a new contract of insurance or is a continuation of an existing policy has been addressed by numerous appellate courts.
In Spence v. Westfield Natl. Ins. Co. (Sept. 2, 1998), Monroe App. No. 797, unreported, Spence contracted with Westfield for a policy of insurance that provided UM/UIM coverage. The policy was issued on April 8, 1994 and was renewed for one year on April 8, 1995, after the effective date of S.B. 20. On July 22, 1995, Spence's mother was killed in an automobile accident. Thereafter, Spence filed an action seeking entitlement to UM/UIM coverage under his policy. Applying Ross, the court found that since Spence originally contracted for insurance prior to the effective date of S.B. 20, the law as interpreted in Savoie
controlled. Regarding the renewal issue, the court found that policy declarations identifying the renewal by the same policy number as the original implied that the policy was a continuing policy of insurance subject to annual renewals and was not a new insurance contract.
The policy at issue in Wolfe v. Wolfe (Nov. 6, 1998), Montgomery App. No. 17111, unreported, was originally issued on December 12, 1983, and was renewed on December 12, 1994. The accident occurred in April 1995. In concluding that the insured's right to UM/UIM coverage arose from the policy's renewal on December 12, 1994 and was thus governed by the law in effect on that date, the court noted that the policy at issue stated:
 With our consent, this policy can be continued for successive policy periods by paying the required premium by the date each new policy period begins. If the premium is not paid when due, the policy will end as of that due date. We'll figure the premium for each new period according to the manuals We then use. [Id.]
The Wolfe court found that because the continuation of the policy was expressly subject to the insurer's consent and to the payment of premiums determined by the insurer at that time, the policy could not be construed as continuing any vested rights that the insured may have had to UM/UIM coverage under the policy in effect preceding the renewal of the policy.
In Townsend v. State Farm Mut. Automobile Ins. Co. (Aug. 14, 1998), Sandusky App. No. S-97-059, Townsend executed a policy of insurance, including provisions for UM/UIM coverage, with State Farm on January 25, 1994. The declarations page stated that the policy was to be renewed at six-month intervals; however, the coverage therein was subject to a "guarantee period" from January 25, 1994 to January 25, 1996. The initial policy period was to run from January 25, 1994 to July 25, 1994. In addition, one of the conditions of the policy was that State Farm would renew the UM/UIM coverage for a sufficient number of periods to provide coverage during the two-year guarantee period shown on the declarations page. Townsend renewed the policy on January 25, 1995, at which time State Farm added an endorsement designed to incorporate the S.B. 20 amendments into the policy, thus reducing Townsend's coverage. On August 23, 1995, Townsend's granddaughter was killed in an automobile accident.
Relying on the guarantee language, the court found that the renewals constituted one continuing contract for insurance during the two-year guarantee period and that, as a matter of law, the initial coverage contemplated by the parties at the time the policy was issued could not be reduced within the guarantee period without constituting a cancellation of the policy. The court distinguished Benson, supra, on the basis that the policy language in Benson expressly provided that coverage would terminate at the expiration of each six-month period if premiums were not timely. By contrast, the language in Townsend's policy expressly provided that Townsend's UM/UIM coverage would be renewed within the two-year guarantee period.
This court, in Holcomb v. State Farm Ins. Co. (Dec. 24, 1998), Franklin App. No. 98AP-353, unreported (1998 Opinions 6086), found that renewals of the policies at issue were not continuations of prior policies but represented new contracts of insurance. Like the policies in Benson, the policies at issue inHolcomb stated that the policy period as shown on the declarations page was six months and that the policy period began and ended at 12:01 a.m. standard time. Moreover, as in Wolfe,supra, the policies stated that the policies could be renewed for successive six-month periods; however, renewal at the end of the guarantee period was subject to the insurance company's option not to renew and to payment of premiums as determined at the time of renewal.
This court distinguished Spence, supra, on the basis that the declarations page on the policies at issue referred to the policy of the prior six months as the "replaced policy" and that the designation for the new policies, while similar to the old, were not the same. This court also noted that like the policy in Townsend, supra, the policies stated that State Farm would renew the policy for a sufficient number of policy periods to provide coverage for the two-year guarantee period shown on the declarations page. This court distinguished Townsend, however, on the basis that the accidents did not occur within two years after each of the policies was initially issued.
In Francis v. McClandish (Apr. 19, 1999), Athens App. No. 98CA21, unreported, the accident giving rise to a claim for UM/UIM coverage occurred on June 17, 1995. The declarations page of the policy expressly stated that the guarantee period of the policy ran from August 30, 1994 until August 30, 1996. The declarations page also stated that the policy period of the particular policy in effect at the time of the accident ran from January 10, 1995 until August 30, 1995. Since the policy in effect at the time of the accident had been renewed after the enactment of S.B. 20, the court looked to language of the policy regarding the conditions of renewal. That language provided that the insurance company would renew the policy for a sufficient number of policy periods to provide coverage during the two-year guarantee period. The conditions of renewal also provided that "the renewal premium will be based upon the rates in effect, the coverages carried, the applicable limits of liability, deductibles and other elements that affect the premium that apply at the time of renewal." Id.
In concluding that the insured had entered into a new policy of insurance commencing on January 10, 1995, the court noted several factors. First, the court construed the following policy provision to mean that the insurance policy terminated at the end of each policy period, with a new period commencing upon payment of the renewal premium:
 The policy period is shown under "Policy Period" on the declarations page and is for successive period of six months each for which you pay the renewal premium. * * * The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page. [Id.]
The court also construed the declarations page description of the policy period as running from January 10, 1995 to August 30, 1995, to mean that the policy was effective, as a matter of contract, for that particular period and no other. The court also found significant the fact that the policy declarations referred to the policy of the prior six months as the "replaced policy" and identified the renewal by a separate number from the original contract. Finally, the court noted that the re-evaluation of the terms and conditions of the renewal policy at the end of a particular policy period suggested that any renewal of the policy represented a new contract of insurance.
Although the court acknowledged that the policy provided that the insurance company would renew the policy for a sufficient number of policy periods to provide coverage during the two-year guarantee period shown on the declarations page, the court, noting that such language was mandated by R.C. 3937.31, did not agree that such language indicates a continuing contract of insurance entered into prior to the enactment of S.B. 20. The court reasoned that:
 * * *[t]he "Guarantee Period" covering renewals does not automatically declare all insurance contracts to be two-year contracts; insurance companies may still issue policies for shorter periods; these contracts are considered as term policies, rather than continuing ones. [Id., citing Benson, supra at 44.]
The court continued:
 * * * If we were to accept [the] view that the Guarantee Period establishes a continuing contract, we would essentially declare that there is no difference between insurance contracts specifying a policy period of two years and contracts specifying a policy period of less than two years but guaranteed renewable. This interpretation belies the statutory language of R.C. 3937.31, which declares these two types of policies to be alternative to one another and therefore different. The former constitutes a single insurance contract while the latter, if written with the appropriate language, may represent several distinct insurance contracts, if renewed, within a two-year period. [Id.]
In Newkirk v. State Farm Mutual Ins. Co. (June 1, 1999), Preble App. No. CA98-05-005, unreported, the insured originally contracted with State Farm for UM/UIM coverage on March 14, 1992. The accident occurred on September 11, 1996. The policy contained the same coverage language and similar policy numbering as the insurance contract in Francis, supra. The only difference between the policies was that the Newkirk policy contained a "Certificate of Guaranteed Renewal" endorsement, which provided that except under defined circumstances, the contract of insurance would not be cancelled or nonrenewed. Regarding the similarities in the contract language found in the Francis and Newkirk policies, the court agreed with the Francis court's analysis. The court then addressed to what extent, if any, the "Certificate of Guaranteed Renewal" changed the analysis from that set forth in Francis. The court concluded that the endorsement did not change the contract coverage language which defined each renewal in terms of a separate term contract. The court found that the fact that the contract could only be "nonrenewed" under certain circumstances did not imply that each renewal represented a continuation of the original policy. The court further found that the reasoning ofFrancis that a statutory "Guarantee Period" did not establish a continuing contract logically applied whether the guarantee was statutorily required by R.C. 3937.31 or provided in a contractual endorsement. Accordingly, the court concluded that the renewals after S.B. 20 constituted new contracts of insurance.
In Spoerndle v. Nationwide Mut. Ins. Co. (June 16, 1999), Summit App. No. 19289, unreported, the accident occurred on December 1, 1995. The policies in effect at the time of the accident were effective as of July 10 and July 24, 1995. The date the insureds originally entered into the contracts of insurance could not be determined from the record before the court. The policies were written for policy periods of six months and provided that Nationwide would renew coverage subject to payment of premiums upon notice of renewal. The policies also provided that at the end of each twenty-four month period after the first effective date of the policy, Nationwide would have the right to refuse to renew the UM/UIM coverage. The court concluded that the policies "would * * * be considered to be term policies whether their effective dates constituted renewals within the initial twenty-four month policy period * * * or subsequent renewals. * * *"
In Rogers v. State Farm Mut. Auto. Ins. Co. (July 12, 1999), Butler App. No. CA 98-10-215, the parties' original contract was entered on September 10, 1993 and was renewed on September 10, 1995. The accident occurred on January 22, 1996. The policy contained the same contract language as that construed in Newkirk, supra. Like the Newkirk court, the Rogers majority found that each six-month renewal constituted a new contract; thus, the court held that the September 10, 1995 renewal represented a new contract and was therefore controlled by S.B. 20.
The dissent noted that in both Benson and Ross, the Supreme Court merely stated that renewals may be new contracts; neither held that renewals must be considered new contracts. The dissent also noted that State Farm was statutorily obligated to maintain coverage from September 10, 1993, until September 10, 1995 and that the policy itself provided that State Farm would renew coverage for a sufficient number of policy periods to provide coverage during the two-year guarantee period shown in the policy's declarations. After applying the Townsend court's finding that renewals constitute one continuing contract for insurance during the two-year guarantee period to the policy at issue, the dissent found that the policy was one continuing contract during the two-year guarantee period from September 10, 1993 to September 10, 1995; thus, the only issue remaining was whether the September 10, 1995 renewal amounted to a "new contract" as contemplated in Benson and Ross.
In concluding that the renewal did not constitute a "new contract," the dissent noted that the only difference between the insurance policy prior to September 10, 1995, and the policy after September 10, 1995, was that the policy number on the declarations page of the former was "211 3022-C10-35B" and the policy number for the latter was "211 3022-035A." The dissent also noted that no substantive changes were made to any of the original terms of the contract.
The dissent also concentrated on the meaning of the term "renewal." After noting that Black's Law Dictionary defines "renewal" as "[t]o grant or obtain extension of; to continue in force for a fresh period * * *" and states that an obligation is renewed when "the same obligation is carried forward by the new paper or undertaking; whatever it may be," Black's Law Dictionary (6 Ed.Rev. 1997) 1296, the dissent determined that the plain meaning of the term indicates that a "renewal" is merely the extension or continuation of an existing contract and is not equivalent to a situation where parties have mutually agreed to enter a new contract. The dissent found that because there had been no change to the insurance contract, nor any negotiation between the parties establishing that the September 10, 1995 renewal constituted a new contract, the renewal merely extended or continued the insurance contract entered September 10, 1993. Thus, the dissent found that the contract should have been construed according to the law in effect prior to October 20, 1994, as enunciated in Savoie.
It is undisputed that the initial policy in the instant case was entered June 22, 1994. It is also undisputed that the policy was renewed on December 22, 1994 and June 22, 1995, after the effective date of S.B. 20. Thus, our first task is to determine whether the renewals amounted to new contracts of insurance. Applying Ross, supra, if the renewals constituted new contracts, the amendment to R.C. 3937.18 controls. If the renewals did not constitute new contracts, the law as interpreted in Savoie controls.
Upon review of the record, we note that plaintiffs and Nationwide have submitted copies of two different policies, each of which is purported to be the policy entered on June 22, 1994.[2] Following a review of the language contained in both policies, we find that, under either policy, the June 22, 1995 renewal did not constitute a new contract of insurance.
The policy submitted by plaintiffs with their memorandum contra contains the following language regarding renewal:
6. RENEWAL
 Your policy is written for a six-month policy period. Renewal for successive policy periods will be subject to the following conditions:
 renewal will be in accordance with policy forms, rules, rates, and rating plans in use by us at the time.
 all premiums or premium installment payments must be paid when due, whether payable directly to us or through any premium finance plan.
 at the end of each 24-month period after the first effective date of the policy, we will have the right to refuse to renew the auto Property Damage Liability, Bodily Injury Liability, Medical Payments, Family Compensation, and Uninsured Motorists coverages. We will have the right to refuse to renew any other coverage at the end of each six-month policy period.
 If we elect not to renew, we will mail or deliver written notice to you 30 days in advance of the date our action will take effect. Mailing of this notice to your last known address or delivery of it to you will be considered proof of notice. For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.
The policy submitted by Nationwide with its reply to plaintiffs' memorandum contra contains declarations pages for policy periods June 22, 1994 to December 22, 1994, December 22, 1994 to June 22, 1995, and June 22, 1995 to December 22, 1995. The declarations for policy period June 22, 1994 to December 22, 1994 list the policy number as "91 E 960312." The declarations for the two subsequent policy periods list the policy number as "91 34 E 960312." The declarations for all three policy periods state that coverage is effective for the six-month policy period indicated, but "only if the required premium for this period has been paid, and for six month renewal periods if renewal premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the address of the policyholder." As to renewal, the policy states, under "general policy conditions":
6. RENEWAL
 This policy is written for a six-month policy period. We will renew it for successive policy periods, subject to the following conditions:
 renewal will be in accordance with policy forms, rules, rates and rating plans in use by us at the time.
 all premiums or premium installment payments must be paid when due, whether payable directly to us or through any premium finance plan.
 prior to the expiration of a policy term for which premium has been paid, we will mail a notice to the policyholder for the premium required to renew or maintain the policy in effect. We will mail this notice to the address last known to us.
 7. NONRENEWAL
 at the end of each six-month period after the effective date of the policy, we will have the right to refuse to renew the auto Property Damage Liability, Bodily Injury Liability Medical Payments, Family Compensation, and Uninsured Motorists coverages if we have indicated our
willingness to issue a new policy. This policy may be issued by another company under the same ownership or management as our company. We will have the right to refuse to renew any other coverage at the end of each six-month policy period.
 At the end of each 24-month period after the first effective date of the policy, we will have the right to refuse to renew the auto Property Damage Liability, Bodily Injury Liability, Medical Payments, Family Compensation, and Uninsured Motorists coverage.
 If we elect not to renew under a) or b), we will mail or deliver written notice to the policyholder 30 days in advance of the date our action will take effect. Mailing of this notice to the last know address or delivery of it to the policyholder will be considered proof of notice.
 For non-payment of renewal premium, coverage will terminate at the end of the last policy period for which premium was paid.
Nationwide argues that this court should find, as did the courts in Benson, Wolfe, Holcomb, Francis, Newkirk andSpoerndle, that each six-month renewal of the insurance contract at issue constitutes a new contract of insurance. In support of its argument, Nationwide specifically points to language in the declarations pages calculating premiums for a six-month period, setting a specific expiration date and time, and making renewal contingent upon the policyholder paying the premium in advance of the renewal date. While this court is fully aware that many of the cases noted above have interpreted similar language to mean that the policy terminated at the end of each policy period, with a new period commencing upon payment of the renewal premium, we do not agree with such interpretation. It is well-settled that insurance policies, which are in language selected by the insurance company and which are reasonably open to different interpretation, must be construed strictly against the insurer and in favor of the insured party. Scott-Pontzer v. Liberty Mut. FireIns. Co. (1999), 85 Ohio St.3d 660. Further, as in Spence,supra, the policy declarations identify the renewals by virtually the same number as the original. In addition, unlike Holcomb andFrancis, the declarations pages do not refer to the policy of the prior six months as the "replaced policy." In our opinion, construing the language contained in the declarations against Nationwide and in favor of plaintiffs, we conclude that the policy was a continuing policy of insurance subject to annual renewals and was not a new contract of insurance.
Nationwide also argues that the language found under section 7a of the policy it submitted suggests that each six-month renewal constitutes a new contract. As noted previously, that section states that: "at the end of each six-month period after the effective date of the policy, we have the right to refuse to renew the * * * Uninsured Motorists coverages if we have indicated our willingness to issue a new policy." Nationwide argues that because this language gives Nationwide the right to refuse to renew coverage after each six-month period, each time Nationwide chooses to renew the policy, such renewal constitutes a new policy, not a continuation of the original policy.
Initially, we note that the policy submitted by plaintiffs does not contain the language found in section 7a of the policy submitted by Nationwide. Rather, the policy submitted by plaintiffs states in section 6a that: "at the end of each 24-month period after the first effective date of the policy, we will have the right to refuse to renew * * * Uninsured Motorists coverages. * * *" The policy submitted by Nationwide, in addition to the language set forth in section 7a, also contains, in section 7b, the same language found in section 6a of the policy submitted by plaintiffs. In our opinion, this provision may be read, like the policy in Townsend, to mean that Nationwide would provide coverage for the statutorily mandated two-year period before Nationwide had the right to refuse to renew the policy. In other words, this language, like the language in Townsend, requires that the policy must be renewed with the same levels of coverage during the two-year guarantee period mandated by R.C. 3937.31(A). The language contained in section 7a, however, appears to give Nationwide the right to refuse to renew coverage after each six-month renewal period, rather than after the two-year period following the effective date of the policy. Read together, these two provisions are ambiguous. "Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Faruque v. Provident Life Acc. Ins. Co. (1987),31 Ohio St.3d 34, syllabus. Construing the provisions in favor of plaintiffs, we conclude that the language found in section 7b of the Nationwide policy and section 6a of plaintiff's policy controls.
The policies construed in Benson and Wolfe did not contain the two-year guarantee language noted above; thus, those cases are clearly distinguishable from the instant case. Further,Holcomb distinguished Townsend on the basis that the accident inHolcomb did not occur within two years after the policies were initially issued. As in Townsend, the accident in the instant case occurred within the two-year period after the policy was initially issued. Thus, Holcomb can be distinguished on this basis.
Finally, in addition to noting the similarities between the policies analyzed in Spence and Townsend and the policy at issue herein, along with the differences between the instant circumstances and those examined in Benson, Holcomb, Wolfe, andFrancis, we also acknowledge that we find the rationale set forth in the Rogers dissent compelling to our determination that the renewals of December 22, 1994 and June 22, 1995 constituted continuations of the original policy issued in June 22, 1994, rather than new contracts of insurance. First, as pointed out by the Rogers dissent, neither Benson nor Ross stand for the proposition that renewals must be considered new contracts of insurance. Rather, both cases hold that renewals may be considered new contracts, depending upon both the particular circumstances involved and the specific terms of the policy. Second, there is no evidence suggesting that the parties negotiated with regard to the renewals or mutually agreed that the renewals constituted new contracts, or that any substantive changes were made to the policy after it was issued to plaintiffs in June 1994. Finally, we are persuaded that the plain meaning of the term "renewal," as used in the context of insurance policies, indicates "an extension or continuation" of an existing policy and is not commensurate with a situation where the parties have mutually agreed to enter into a new contract of insurance.
For all the foregoing reasons, we find that the December 22, 1994 and June 22, 1995 renewals of plaintiffs' UM/UIM policy did not constitute new contracts of insurance. Because the effective date of plaintiffs' policy was June 22, 1994, prior to the October 20, 1994 effective date of the amendment to R.C.3937.18, this case is governed by the law as interpreted inSavoie. Accordingly, plaintiffs are entitled to collect up to the full limits of their policy, to the extent that their damages exceed the $225,000 paid by defendant Olinn's insurance company.Id. at paragraph three of the syllabus.
Having found Savoie to govern the instant action, we also hold that under Schaefer, Mr. and Mrs. Thompson each have separate claims subject to separate per person policy limits under the terms of either of the policies submitted by the parties to this action.
The "Limits of Payment" section of the policy submitted by plaintiffs provides, in pertinent part:
 AMOUNTS PAYABLE FOR UNINSURED MOTORISTS LOSSES Our obligation to pay uninsured motorists losses is limited to the amounts per person and per occurrence stated in the attached Declarations. The following conditions apply to these limits:
 Limits shown for any one person are for all legal damages claimed by anyone for bodily injury or loss of services of one person as a result of one occurrence. * * *
Similarly, the "Limits of Payment" section of the policy submitted by Nationwide states, in relevant part:
 AMOUNTS PAYABLE FOR UNINSURED MOTORISTS LOSSES We agree to pay losses up to the limits stated in the attached Declarations. Any change in those limits must be requested by the policyholder in writing. The following applies to these limits:
 Bodily injury limits shown for any one person are for all legal damages, including all derivative claims, claimed by anyone for bodily injury to one person as a result of one occurrence. * * *
As noted previously, Schaefer held that each person who is covered by an UM/UIM policy and who asserts a claim for loss of consortium possesses a separate claim subject to a separate per person limit. Schaefer further held that policy language purporting to limit loss of consortium claims to a single per person limit is unenforceable. Both of the provisions noted above unambiguously state that Mr. and Mrs. Thompson's loss of consortium claims, arising from the bodily injury sustained by their daughter, share her single per person limit. Such policy language is clearly unenforceable under Schaefer. UnderSchaefer, Mr. and Mrs. Thompson each possess separate loss of consortium claims subject to the separate per person limit of their UM/UIM policy.
Having determined that plaintiffs are entitled to collect up to the full limits of their policy to the extent that their damages exceed the amount paid by Olinn's insurance company, and that Mr. and Mrs. Thompson are entitled to separate loss of consortium claims, plaintiffs' public policy and right to remedy arguments are rendered moot.
This court has reviewed the entire record which was before the trial court and, upon consideration thereof and the law, finds that the trial court erred by finding that plaintiffs were not entitled to assert a claim for UM/UIM benefits due to the bodily injuries sustained by their daughter. There remains no genuine issue of material fact and, when construing the evidence that was before the trial court most strongly in favor of plaintiffs, reasonable minds can only conclude that Nationwide is not entitiled to judgment as a matter of law.
Accordingly, plaintiffs' single assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
DESHLER, BOWMAN and TYACK, JJ., concur.
[1] R.C. 3937.31(A) provides, in pertinent part, that: "[e]very automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years."
[2] Although both plaintiffs and Nationwide reference renewal policy language contained in amendatory endorsement 1879A in their briefs, this court cannot consider the language contained therein, as the record does not contain a copy of the endorsement. Further, this court's failure to consider the renewal language contained in amendatory endorsement 1879A has no bearing on the outcome of the instant action because the policy submitted by Nationwide that is part of the record and will be considered by this court has renewal language substantially similar to that in amendatory endorsement 1879A.