OPINION
{¶ 1} This appeal stems from a medical-malpractice action filed by appellant Thomas F. Brady against appellee Daniel B. Miller, M.D., Gem City Urologists, Inc., John F. McCarthy, M.D., Susan Stedje, M.D., and Primed Family Practice. The basis of the malpractice claim was a missed diagnosis of testicular cancer. In addition to Brady's claim, his parents and his then-fiancé asserted loss-of-consortium claims.
 {¶ 2} A jury trial commenced on April 29, 2002. Following the presentation of the plaintiffs' evidence, the trial court directed a defense verdict on the issue of punitive damages. The trial court also directed a defense verdict on the loss-of-consortium claim asserted by Brady's parents. It denied the defendants' motion for a directed verdict on the loss-of-consortium claim asserted by Brady's then-fiancé and on Brady's demand for lost-wages as a component of damages. After the presentation of all evidence, defense counsel renewed the motion for a directed verdict, and the trial court overruled the motion. The jury subsequently awarded Brady aggregate damages of $1,020,000 on his malpractice claim against Dr. Miller and Gem City Urologists, Inc., but rendered a verdict in favor of the other defendants on the claim. This award included $300,000 for lost wages. With regard to the loss-of-consortium claim asserted by Brady's then-fiancé, the jury declined to award any damages.
 {¶ 3} After the trial court entered final judgment on the jury's verdict, Dr. Miller and Gem City Urologists, Inc., filed a motion for remittitur or, in the alternative, a new trial on the issue of lost wages. The trial court sustained the motion and remitted the lost-wages award to zero, thereby reducing the total damages award to $720,000. In addition, Brady's parents and his then-fiancé filed a motion for additur or, in the alternative, a new trial on their loss-of-consortium claims. The trial court overruled this motion. Finally, Brady filed a motion for prejudgment interest and costs of $66,134.38. The trial court overruled the motion for prejudgment interest and directed Dr. Miller and Gem City Urologists, Inc., "to pay only those costs specifically authorized by statute and Rule 54 of the Ohio Rules of Civil Procedure." The plaintiffs subsequently filed a timely appeal advancing four assignments of error.
 {¶ 4} The first two assignments of error, which are related, concern the trial court's remittitur of the lost-wages award that Brady received from the jury. In the first assignment of error, Brady contends that the trial court erred by ordering remittitur of the lost-wages award without his consent. In the second assignment of error, he argues that the trial court erred by ordering remittitur of the lost-wages award where the award was not excessive. As a means of analysis, we will address these two assignments or error in reverse order.
 {¶ 5} With regard to the second assignment of error, we find no abuse of discretion in the trial court's decision to reduce the lost-wages award from $300,000 to zero.[1] The Ohio Supreme Court has identified four requirements that must be met before a court may order remittitur: (1) unliquidated damages must be assessed by a jury; (2) the jury's verdict must not have been influenced by passion or prejudice; (3) the damages award must be excessive; and (4) the prevailing party must consent to a reduction in damages. Wightman v. Consolidated Rail Corp. (1998), 86 Ohio St.3d 431, 444. If the prevailing party refuses to accept a remittitur, then the court must order a new trial. Stine v. Hanks
(Feb. 20, 1987), Montgomery App. No. 9673; see also Chester Park Co. v.Schulte (1929), 120 Ohio St. 273, at syllabus ("In an action for unliquidated damages neither the trial court nor any reviewing court has the power to reduce the verdict of a jury or to render judgment for a lesser amount without the consent of the party in whose favor the verdict was rendered to such reduction.").
 {¶ 6} In the present case, the trial court found that the jury's award of $300,000 for lost wages was excessive because Brady had failed to establish any lost wages with reasonable certainty. The lost-wages claim appears to have been intended to compensate Brady for (1) a summer of lost income performing lawn-care work and (2) lost income as a result of deferring admission to medical school for one year. Upon review, however, the trial court found that Brady had not presented any evidence concerning the amount of money he lost as a result of missing one summer performing lawn-care work and as a result of deferring his medical school admission.[2] Consequently, the trial court determined that any award of lost wages was speculative and, therefore, inappropriate.
 {¶ 7} On appeal, Brady contends that the record contains ample evidence to support the jury's lost-wages award. Without citation to the record, Brady asserts that this evidence consists of "testimony as to the delay in [his] graduation from medical school, the nature of the injury suffered by [him], [his] diminished life expectancy as a result of the injury, [his] lost time at work for future treatment, and medical complications suffered by [him] resulting from chemotherapy and loss of organs."
 {¶ 8} Having reviewed the full trial transcript, we find no evidence to support an award of lost wages. In order to be recovered, lost wages must be established with reasonable certainty. Lingo v.Leeper, Montgomery App. No. 18856, 2002-Ohio-1205. In Menda v.Springfield Radiologists, Inc., Clark App. No. 2001-CA-91,2002-Ohio-6785, we recognized that a remittitur is proper when a damages award is against the manifest weight of the evidence. The present case presents such a situation. Although the record establishes that Brady deferred his medical school admission by one year, he made no effort to identify any lost wages as a result of the delay. As the appellees properly note, the record is devoid of evidence concerning the amount of salary that a one-year delay in entering medical school cost Brady. The record also contains no evidence to suggest that "the nature of the injury" resulted in any reasonably certain lost wages. Nor have we found any evidence to suggest that Brady has a "diminished life expectancy" or any reasonably certain lost wages resulting therefrom.[3] We also have not found evidence establishing that any reasonably certain lost wages either resulted from "medical complications" or will result from future medical treatments. Finally, while the record does suggest that Brady's illness prevented him from performing a summer of lawn-care or irrigation work, the record contains absolutely no testimony about the hours he would have worked or the value of his labor. Absent the presentation of evidence on the foregoing issues, we cannot say that trial court abused its discretion in remitting the lost-wages award to zero on the basis that it was speculative.[4] Accordingly, we find Brady's second assignment of error to be unpersuasive.
 {¶ 9} With regard to the first assignment of error, however, we agree that the trial court erred by ordering remittitur of the lost-wages award without Brady's consent. As noted above, consent of the prevailing party is a prerequisite to a trial court ordering a reduction in a jury's damages award. Wightman, supra, at 444. In the present case, Brady never consented to the remittitur of his lost-wages award. In fact, he expressly informed the trial court that he did not consent. As a result, the trial court erred in ordering remittitur without affording Brady a new trial on the issue, as required under Ohio law.
 {¶ 10} Although the appellees do not seriously dispute that the trial court erred in remitting the lost-wages award without Brady's consent, they argue that the error was harmless. Rather than remanding for a new trial on the issue of lost wages, which is the typical remedy when a trial court orders remittitur without the prevailing party's consent, the appellees argue that we should treat the trial court's ruling on their motion for remittitur as "in essence, a reconsideration of the motion for directed verdict on the issue of lost wages, or in the alternative, a judgment notwithstanding the verdict." In support of this argument, the appellees reason:
 {¶ 11} "The trial court's granting of a remittitur in this case was simply a reconsideration of its decision to deny the directed verdict motion. In fact, the court states in its decision that `the plaintiff provided no expert testimony nor any evidence of the amount of money lost due to illness.' (August 7, 2002, Decision, p. 2). If no evidence had been presented, then a directed verdict should have been granted. However the motions and respective decisions were phrased, the essence of the decision was that the issue of lost wages should not have been considered by the jury. In order to avoid the expense and aggravation of a new trial, the rules allow for other ways to correct such error. One of these is through remittitur. Another is through a reconsideration of the directed verdict motion, and yet another is through a judgment notwithstanding the verdict. Whatever mechanism is used, the outcome is still the same and any such procedural error should be deemed harmless. The trial court correctly determined that there was no evidence to support the jury's verdict for lost wages and in the interest of justice and equity, took steps to rectify the error. Because Appellees received the relief to which they were entitled, they have not taken issue with the initial failure of the court to grant the directed verdict."
 {¶ 12} Upon review, we find the foregoing argument to be unpersuasive. Despite the appellees' effort to depict motions for remittitur, a directed verdict, and judgment notwithstanding the verdict as procedural devices that may be used interchangeably, they are not the same. As noted above, a motion for remittitur challenges the weight of the evidence, whereas a motion for a directed verdict and a motion for judgment notwithstanding the verdict challenge the legal sufficiency of the evidence. Menda v. Springfield Radiologists, Inc., Clark App. No. 2001-CA-91, 2002-Ohio-6785; Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 257-258. In the present case, the appellees unsuccessfully moved for a directed verdict. They subsequently filed a motion for remittitur rather than a motion for judgment notwithstanding the verdict. The remittitur motion, which the trial court sustained, constituted a challenge to the weight of the evidence to support a lost-wages award. Absent Brady's consent to remittitur, the result of the trial court sustaining the motion is that he is entitled to a new trial on the issue of lost wages. If the appellees had intended to challenge the legal sufficiency of the evidence on that issue, thereby precluding a new trial, they should have filed a motion for judgment notwithstanding the verdict and/or appealed from the denial of their motion for a directed verdict. Given their failure to do so, we discern no reason to treat their motion for remittitur as a motion for judgment notwithstanding the verdict and, in so doing, relieve them from the predictable consequence of their own motion. We also reject the appellees' alternative argument that any new trial must be on all issues, including liability. This court has recognized that a new trial may be limited to an erroneously decided lost-wages issue and need not include a retrial of issues decided by a jury free of error. Warwick v. Mills (April 24, 1998), Montgomery App. No. 16609. Accordingly, we sustain Brady's first assignment of error, and we will remand this cause for a new trial on the issue of his entitlement to lost wages as a component of damages on his medical-malpractice claim.[5]
 {¶ 13} In the third assignment of error, Brady's parents, Thomas J. Brady and Carole Brady, contend that the trial court erred in not submitting their loss-of-consortium claim to the jury. Although this court traditionally has not recognized a parent's right to maintain a claim for loss of consortium caused by injuries to an adult child, Brady's parents argue that we should extend the common law and recognize such a claim in light of the Ohio Supreme Court's recent decision in Rolfv. Tri State Motor Transit Co. (2001), 91 Ohio St.3d 380, 2001-Ohio-44. For their part, the appellees argue that Rolf does not warrant an extension of the common law, and they urge us to hold that the parents of an emancipated adult child cannot recover for loss of consortium.
 {¶ 14} Upon review, we find persuasive the argument advanced by Brady's parents. In recent years, Ohio law has evolved significantly as it pertains to loss-of-consortium claims brought by parents and their children. In Gallimore v. Children's Hops. Med. Ctr. (1993),67 Ohio St.3d 244, the Ohio Supreme Court recognized a minor child's cause of action for loss of parental consortium, and a parent's cause of action for loss of filial consortium involving injury to a minor child. Thereafter, in Rolf, supra, the Ohio Supreme Court held that even emancipated adult children may recover for loss of parental consortium. To date, the Ohio Supreme Court has not specifically addressed the remaining issue which is now before us on appeal, to wit: whether parents may recover for the loss of filial consortium when an emancipated adult child is injured.
 {¶ 15} Traditionally, this court and other intermediate appellate courts in Ohio have held that a parent has no loss-of-consortium claim as a result of injuries sustained by an emancipated adult child. See, e.g.,Paroline v. Doling Associates (Nov. 15, 1990), Montgomery App. Nos. 11571, 11789, 11919. In light of the Ohio Supreme Court's opinions in Gallimore and Rolf, however, we are persuaded that such claim does exist under the common law and that the Ohio Supreme Court would recognize it. In Gallimore, the court noted that a parent has a right to maintain a loss-of-consortium action against a third-party tortfeasor who negligently injures the parent's minor child.
 {¶ 16} In this context, the court reasoned that "consortium" could include a loss of society, companionship, comfort, love, and solace between parent and child. Gallimore, supra, at 246, 250-251. TheGallimore court also noted that "[r]egardless of who suffers the physical injury (parent or child), the other member of the parent-child relationship may suffer loss of the consortium of the injured victim." Id. at 255. As a result, the court reasoned that a minor child also has a cause of action for loss of parental consortium to recover for a loss of society, companionship, affection, comfort, guidance, and counsel. Id.
 {¶ 17} In Rolf, the Ohio Supreme Court recognized that emancipated adult children suffer many of the same types of losses as minor children when their parents are injured by a tortfeasor. As a result, the Rolf
court determined that it was "irrational to deny recovery for loss of parental consortium simply because the child has reached the age of majority." Rolf, supra, at 383. Notably, the Ohio Supreme Court also quoted with approval the following language from Howard Frank, M.D.,P.C. v. Maricopa Cty. Superior Court (1986), 150 Ariz. 228, 232,722 P.2d 955, 959, a case which, like the present case, involved a loss-of-consortium claim brought by parents to recover for injuries sustained by their adult child:
 {¶ 18} "`Surely nature recoils from the suggestion that the society, companionship and love which compose filial consortium automatically fade upon emancipation [,] while common sense and experience teach that the elements of consortium can never be commanded against a child's will at any age. The filial relationship, admittedly intangible, is ill-defined by reference to the ages of the parties and ill-served by arbitrary age distinctions. Some filial relationships will be blessed with mutual caring and love from infancy through death while others will always be bereft of those qualities. Therefore, to suggest as a matter of law that compensable consortium begins at birth and ends at age eighteen is illogical and inconsistent with common sense and experience.'" Rolf, supra, at 383.
 {¶ 19} We believe that the foregoing language applies equally in the present case. Just as the Ohio Supreme Court found in Rolf in the context of a parental-consortium claim brought by an adult child, we find that it is irrational to deny recovery for loss of filial consortium simply because the child has reached the age of majority. "`The parent-child relationship does not end when the child becomes eighteen. It endures throughout life and can be characterized by love, care and affection for the duration.'" Rolf, supra, at 383, quoting Hammar, Breaking the Age Barrier in Alaska: Including Adult Children in Loss of Filial Consortium Actions (1995), 12 Alaska L.Rev. 73, 83. In short, we find no legitimate reason to limit recovery for loss of filial consortium claims to cases of injury to minor children. Surely, Brady's parents were equally capable of suffering a loss of society, companionship, comfort, love, and solace as a result of their son's misdiagnosis and his life-threatening battle with cancer regardless of whether he was seventeen or twenty-one years old. As a result, we conclude that under Ohio common law, Thomas J. Brady and Carole Brady were entitled to maintain a loss-of-consortium claim in connection with the medical malpractice performed on their adult son.[6]
Parenthetically, we note that in Moroney v. State Farm Mutual Auto.Ins. Co., Richland App. No. 01CA99, 2002-Ohio-3829, the Fifth District Court of Appeals did consider the issue now before us, and it reached a contrary conclusion. In so doing, however, the Moroney court indicated that it "might be persuaded" to recognize a parent's loss of consortium claim for injury to an emancipated adult child. The Fifth District found itself constrained, however, by the Rolf court's failure to recognize such a claim. Once again, we believe that the Moroney court read too much into Rolf, which in no way disapproved the loss-of-consortium claim now before us. As noted above, the Rolf court simply did not decide whether a parent could maintain a loss-of-consortium claim for injury to an emancipated adult child. See Rolf, supra, at 381, fn. 1 ("Since the only issue before this court concerns loss of parental consortium, we are limiting our discussion to that issue."). Unless it wished to render a purely advisory opinion to individuals not before it, the Rolf court could not have decided that issue. As a result, its failure to address the issue now before is neither surprising nor legally significant. Accordingly, we sustain their third assignment of error, and we will remand this cause for a trial on that issue.
 {¶ 20} In the fourth assignment of error, the appellants contend that the trial court committed several errors that deprived them of due process and demonstrated a pattern of judicial bias. In particular, they argue that the trial court erred in (1) awarding costs but failing to hold a hearing on the issue or to reduce the award to a sum certain, (2) denying prejudgment interest without holding an evidentiary hearing on the issue, and (3) ordering remittitur of a lost-wages award that was not excessive without the prevailing party's consent. According to the appellants, these acts demonstrate a pattern of judicial prejudice or bias, particularly when viewed in light of the trial court judge's decision to hold their counsel in contempt in an unrelated recent case. As a result, the appellants urge this court to "recommend" that the trial court judge voluntarily recuse herself on remand.
 {¶ 21} Upon review, we find the fourth assignment of error to be without merit. The record reflects that the trial court scheduled a November 15, 2002, hearing on the issue of prejudgment interest and costs. According to the trial court's decision and entry dated December 16, 2002, defense counsel subsequently submitted a stipulation of facts with telephone authorization from plaintiff's counsel, and neither party appeared for the hearing.[7] (Doc. #178). As a result, the trial court decided the issues of prejudgment interest and costs on the parties' written briefs and stipulations. In light of this explanation, we cannot say that the trial court erred in deciding the issues of prejudgment interest and costs without holding an evidentiary hearing.
 {¶ 22} We also find no merit in the appellants' argument about the trial court's failure to reduce the award of costs to a sum certain. The trial court's decision and entry of December 16, 2002, ordered the payment of costs as authorized by statute and Civ.R. 54, but did not reduce this award to a sum certain. The appellants appear to suggest that the absence of a specific award of costs rendered the trial court's December 16, 2002, order not final and appealable. In State ex rel. Whitev. Cuyahoga Metro. Hous. Auth. (1997), 79 Ohio St.3d 543, 546, however, the court recognized that an order may be final and appealable even though it leaves unresolved certain ministerial tasks, such as assessing costs, which are unlikely to produce a second appeal. Finally, for the reasons set forth more fully above, we agree that the trial court erred in ordering remittitur of the lost-wages award without Brady's consent. We cannot agree, however, that this error or anything else in the record demonstrates a pattern of judicial bias or prejudice against the appellants or their counsel. The trial transcript in this case is unremarkable with regard to the trial court judge's interaction with counsel, and we find nothing to suggest that the judge became personally embroiled in the action. Accordingly, we overrule the appellants' fourth assignment of error.
 {¶ 23} Based on the reasoning and citation of authority set forth above, we hereby sustain the appellants' first and third assignments of error, reverse the trial court's judgment in part, and remand the cause for further proceedings consisted with this opinion.
 {¶ 24} Judgment affirmed in part, reversed in part, and cause remanded.
FAIN. P.J., and GRADY, J., concur.
[1] See Menda v. Springfield Radiologists, Inc., Clark App. No. 2001-CA-91, 2002-Ohio-6785 (applying abuse-of-discretion standard to review of trial court's order granting remittitur of a jury verdict).
[2] At the time of his diagnosis and treatment for cancer, Brady was a senior at the University of Dayton, and he was preparing to enter medical school at Wright State University in the fall. It appears that he had planned to spend the summer before medical school working in a lawn care or irrigation business. After discovering his illness, he deferred his medical school admission for one year, and he was unable to work during the summer.
[3] Brady's own expert estimated that there is only a three to five percent chance of his cancer returning.
[4] In opposition to this conclusion, Brady contends that the "two-issue" rule precludes us from examining the jury's lost-wages award. We find this argument meritless. The "two-issue" rule provides: "[W]here there are two causes of action, or two defenses, thereby raising separate and distinct issues, and a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party, it will be presumed that all issues were so determined; and that, where a single determinative issue has been tried free from error, error in presenting another issue will be disregarded."Hampel v. Food Ingred. Specialties, Inc., 89 Ohio St.3d 169,2000-Ohio-128. The foregoing rule has no applicability herein because the jury's verdict contained special interrogatories indicating the amount of damages awarded for each component of damages sought by Brady on his malpractice claim.
[5] As will be discussed more fully, infra, we decline Brady's request that the new trial be ordered to proceed before a judge other than the one who presided over the first trial.
[6] In opposition to this conclusion, the appellees stress that theRolf court "stopped short" of recognizing a parent's right to bring a loss-of-consortium claim for injuries sustained by an emancipated adult child. As a result, the appellees reason that "this court should not create a new cause of action where the Supreme Court has already rejected the opportunity." We find this argument unpersuasive. In Rolf, the matter came before the Ohio Supreme Court on a certified a question of state law from the U.S. District Court for the Northern District of Ohio. The certified question was whether emancipated adult children could maintain a claim under Ohio law for the loss of consortium caused by injuries to a parent. In light of that certified question, it is plain to us why theRolf court "stopped short" of recognizing a parent's right to bring such a claim for injuries sustained by an emancipated adult child. The certified question simply did not involve that issue. Consequently, we cannot agree with the appellees' assertion that the Rolf court "rejected the opportunity" to recognize the claim at issue in this case.
[7] The appellants argue in a footnote that the trial court "was fully aware that the parties had agreed not to hold the hearing at that time." The implication of this statement is that the trial court was equally aware that the parties did desire an evidentiary hearing at some later time. As the appellees properly note, however, nothing in the record demonstrates that anyone ever sought a continuance or expressed a desire to hold the hearing.